IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**
APR 2 5 2001

| | |
|---|---|
| JEFFERY BRADLEY, | ) |
| Plaintiff | ) |
| | ) |
| v. | ) No. |
| | ) |
| AMSTED INDUSTRIES INCORPORATED EMPLOYEES' STOCK OWNERSHIP PLAN ("ESOP"), AMSTED INDUSTRIES, and M.J. HOWER, | ) ) ) ) ) |
| Defendants | ) |

**01C 2963**
JUDGE MORAN

MAGISTRATE JUDGE DENLOW

FILED-E04
01 APR 25 PM 2: 42
CLERK
U.S. DISTRICT COURT

## COMPLAINT

Now comes the plaintiff, JEFFERY BRADLEY, by his attorneys, MARK D. DE BOFSKY, NATHAN Q. RUGG, and DE BOFSKY & DE BOFSKY, and complaining against the defendants, he states:

### General Allegations

#### *Jurisdiction and Venue*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover benefits due under the terms of an employee benefit plan which, in this case, consists of an employee stock ownership plan. In addition, this action may be brought before this court pursuant to 28 U.S.C. §1331, which gives the district court jurisdiction over actions that arise under the laws of the United States.

2. The ERISA statute provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials. Those avenues of appeal have been exhausted.

3. Venue is proper in the Northern District of Illinois. 29 U.S.C. §1132(e)(2), 28 U.S.C. §1391.

### Nature of Action

4. This is a claim seeking a lump sum distribution of the cash equivalent of plaintiff's accumulated stock or securities held in the Amsted Industries Incorporated Employees' Stock Ownership Plan ("Plan")(A true and correct copy of the Plan is attached hereto and by that reference incorporated herein as Exhibit "A"). This action is brought pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)) and/or §502(a)(3) (29 U.S.C. §1132(a)(3)) and/or §510 (29 U.S.C. §1140).

### The Parties

5. Jeffery Bradley ("Bradley") is and was a resident of Naperville, Illinois at all times relevant hereto, and the events, transactions, and occurrences relevant to Bradley's claims took place within the Northern District of Illinois.

6. Amsted Industries Incorporated Employees' Stock Ownership Plan ("Plan") was created in 1984 to purchase shares of common stock of Amsted Industries ("Amsted") to be held in trust in order to provide retirement income to eligible participants and to allow participants the opportunity to contribute to the success of Amsted Industries as employee-owners of the organization. M.J. Hower ("Hower") was acting, at all times relevant hereto, as the Plan Administrator for the Plan, and exercised management and control over the administration of the Plan.

### *Statement of Facts*

7. Jeffery Bradley was employed by a division of Amsted (Griffin Pipe Products Co.) for approximately 30 years; and he participated in the Plan since its inception.

8. On or about March 31, 2000, Bradley gave notice to Amsted Industries of his intent to retire as of June 30, 2000, and to obtain a lump sum distribution of the accumulated value of his ESOP Plan benefits. In response, Amsted furnished Bradley with the paperwork necessary to effect his retirement and distribution of his ESOP Plan benefits (a true and correct copy of the ESOP distribution documents furnished to Bradley on or about April 13, 2000 are attached hereto and by that reference incorporated herein as Exhibit "B").

9. At that time, the Plan permitted participants, at the time of their retirement, to receive without conditions a lump sum cash distribution of the value of the shares of stock held by each participant in the Plan.

10. Pursuant to the Plan in existence as of the date Bradley received his ESOP distribution election, on April 25, 2000, in the presence of a notary public, Bradley signed the ESOP distribution election form, choosing the form of distribution permitting payment of the accumulated value of his ESOP plan benefits in a single lump sum. In addition, Bradley's spouse, Susan Bradley, in the presence of a notary public, executed a spousal consent to a lump sum distribution (a true and correct copy of the foregoing documents is attached hereto and by that reference incorporated herein as Exhibit "C").

11. After providing the retirement election and ESOP distribution documents to Bradley, the payroll supervisor at his facility, Darlene Feliksek, discouraged Bradley's immediate

submission of his ESOP election. Instead, she affirmatively encouraged Bradley to delay submission of his ESOP distribution election, which was finally submitted in May 2000.

12. Unknown to Bradley at that time, on April 25, 2000, the Board of Directors of Amsted Industries, amended the ESOP Plan effective 12:00 midnight on April 25, 2000 "subject to and contingent upon the receipt of a favorable determination letter from the Internal Revenue Service..." precluding a lump sum distribution of ESOP Plan benefits and limiting distribution in any calendar year to only 20% of the participant's account balance (a true and correct copy of the actions of the Board of Directors on April 25, 2000 is attached hereto and by that reference incorporated herein as Exhibit "D").

<u>Count I</u>

For Count I of his Complaint, plaintiff states:

1-12. Plaintiff realleges paragraphs 1-12 of the General Allegations of this Complaint as paragraphs 1-12 of Count I of this Complaint and by that reference incorporates those allegations herein.

13. On information and belief, no approval letter from the Internal Revenue Service was received by Amsted or the Plan prior to the submission of Bradley's request for a lump sum distribution of the accumulated value of his ESOP plan benefits.

14. As a result thereof, the condition precedent for the effectiveness of the April 25, 2000 amendment did not occur prior to plaintiff's election of a lump sum distribution of benefits.

15. Plaintiff has demanded that the Plan provide him with a lump sum distribution of the accumulated value of his ESOP plan benefits.

16.   In response, the Plan refused to issue a lump sum distribution of benefits; and following that refusal, plaintiff administratively appealed the Plan's decision and has exhausted all administrative remedies prior to bringing suit.

17.   The decision made by the Plan to deny plaintiff a lump sum distribution of the accumulated value of his ESOP plan benefits is contrary to the provisions of the Plan in existence at the time plaintiff demanded such benefits.

WHEREFORE, plaintiff prays for the following relief:

A.   That the court enter judgment in plaintiff's favor and against the Plan and that the court order the defendant to pay plaintiff the entire accumulated value of his ESOP plan benefits.

B.   That the court order the Plan to pay plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment;

C.   That the court award plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

D.   That plaintiff recover any and all other relief to which he may be entitled, as well as the costs of suit.

### Count II

In the alternative to Count I, plaintiff states as follows:

1-12.   Plaintiff realleges paragraphs 1-12 of the General Allegations of this Complaint as paragraphs 1-12 of Count II of this Complaint and by that reference incorporates those allegations herein.

13.   At the time he notified Amsted of his intent to retire, Bradley made it clear to Amsted, through its agents and employees, that he was seeking a lump sum distribution of ESOP

plan benefits based on retirement plans he had made; and his expectancy of the fruition of those retirement plans was dependent on a lump sum distribution of accumulated ESOP Plan benefits.

14. Once Amsted became aware of Bradley's retirement plans and his request for a lump sum distribution of his ESOP Plan benefits, it and Hower then became subject to a fiduciary duty imposed pursuant to 29 U.S.C. §1104 to communicate to Bradley material facts affecting his interest in receiving a lump sum distribution of the accumulated value of his ESOP Plan benefits and in affirmatively preventing submission of Bradley's lump sum ESOP Plan distribution election prior to midnight on April 25, 2000.

15. Notwithstanding that duty, Amsted and However breached the fiduciary duties owed to Bradley by concealing from him its plans to amend the Plan to prohibit a lump sum distribution; and both Amsted and Hower, acting through agents and other employees, affirmatively delayed Bradley's submission of his ESOP Plan benefit distribution until after midnight on April 25, 2001, even though the election for a lump sum distribution of accumulated ESOP plan benefits was signed prior to that time, along with a signed spousal consent and notarization of all necessary signatures having taken place prior to midnight on April 25, 2001.

16. When Bradley submitted an election seeking a lump sum distribution of the accumulated value of his ESOP Plan benefits, the Plan refused to honor his request.

17. Following the Plan's refusal to issue a lump sum benefit distribution, plaintiff administratively appealed the Plan's decision and has exhausted all administrative remedies prior to bringing suit.

18.   The decision made by the Plan to deny plaintiff a lump sum distribution of the accumulated value of his ESOP plan benefits was in breach of the fiduciary duties owed by Amsted and Hower, and by their agents and employees, to the plaintiff.

19.   As a direct and proximate result of the foregoing, Bradley was denied a lump sum distribution of his accumulated ESOP Plan benefits; and the value of his accumulated benefits has since declined based on a diminished stock price.

WHEREFORE, plaintiff prays for the following relief:

A.   That the plaintiff recover from the defendants, in the form of restitution, a lump sum distribution of the accumulated value of his ESOP plan benefits based on the valuation as of the date plaintiff made his election of a lump sum distribution;

B.   That the plaintiff receive interest on the withheld payment;

C.   That the court award plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

D.   That plaintiff recover from the defendants any and all other relief to which he may be entitled, as well as the costs of suit.

## Count III

In the alternative to either Count I or II, plaintiff states as follows:

1-12.   Plaintiff realleges paragraphs 1-12 of the General Allegations of this Complaint as paragraphs 1-12 of Count III of this Complaint and by that reference incorporates those allegations herein.

13.   Section 510 of ERISA (29 U.S.C. §1140), which is enforceable pursuant to 29 U.S.C. §502(a)(3), makes it unlawful for any person to discharge, expel, or discriminate against a

participant for the purpose of interfering with the attainment of any right to which the participant is or may become entitled under a plan.

14.     Defendants' actions, as described above, which prevented plaintiff from receiving a lump sum distribution of his accumulated ESOP Plan benefits in accordance with his election, constituted a violation of plaintiff's rights under , constituted a violation of plaintiff's rights under ERISA §510.

15.     Defendants took the actions described above for the purpose of interfering with the plaintiff's attainment of his right to receive a lump sum distribution of his ESOP Plan benefits.

16.     As a direct and proximate result thereof, Bradley was denied a lump sum distribution of his accumulated ESOP Plan benefits; and the value of his accumulated benefits has since declined based on a diminished stock price.

WHEREFORE, plaintiff prays for the following relief:

A.  That the plaintiff recover from the defendants, in the form of restitution, a lump sum distribution of the accumulated value of his ESOP plan benefits based on the valuation as of the date plaintiff made his election of a lump sum distribution;

B.  That the plaintiff receive interest on the withheld payment;

C.  That the court award plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g); and

D.  That plaintiff recover from the defendants any and all other relief to which he may be entitled, as well as the costs of suit.

One of the attorneys for plaintiff

Mark D. DeBofsky
Nathan Q. Rugg
DeBofsky & DeBofsky
77 W. Washington Street, Suite 500
Chicago, Illinois 60602
(312) 372-5718
FAX (312) 372-0117

## AMSTED INDUSTRIES INCORPORATED

## EMPLOYEES' STOCK OWNERSHIP PLAN

Amended and Restated

Effective October 1, 1999

EXHIBIT

"A"

Table Of Contents

Page

ARTICLE 1 .............................................................................. 1
General .............................................................................. 1
  1.1     Purpose.............................................................. 1
  1.2     Source of Funds .................................................. 1
  1.3     Scope of Plan Coverage ...................................... 1
  1.4     Definitions .......................................................... 2

ARTICLE 2 .............................................................................. 12
Eligibility and Participation .................................................. 12
  2.1     Eligibility Requirements...................................... 12
  2.2     Leased Employees .............................................. 12

ARTICLE 3 .............................................................................. 13
Contributions by Employers .................................................. 13
  3.1     Contributions...................................................... 13
  3.2     Application of ESOP Contributions and Dividends and
        Other Asset Management Matters ...................... 14

ARTICLE 4 .............................................................................. 15
Contributions by Participants ................................................ 15
  4.1     No Participant Contributions .............................. 15

ARTICLE 5 .............................................................................. 16
Accounting Provisions and Allocations .................................. 16
  5.1     Participants' Accounts ........................................ 16
  5.2     Common Interests in Funds................................ 16
  5.3     Suspense Account .............................................. 16
  5.4     Determination of Value of Trust Fund and of Net Earnings
        or Losses............................................................ 19
  5.5     Dividends on Allocated Company Securities; Allocation of
        Net Earnings or Losses ...................................... 20
  5.6     Eligibility to Share in Allocations...................... 20
  5.7     Forfeitures .......................................................... 22
  5.8     Allocation of Employer Contributions, Forfeitures and
        Released Company Securities ............................ 23
  5.9     Limitation on Annual Additions........................ 25

| | | |
|---|---|---|
| 5.10 | Priority of Payments | 28 |
| 5.11 | Compensation Limitation | 28 |
| 5.12 | Sale of Company Securities or Other Plan Assets | 29 |
| 5.13 | Valuation of Company Securities | 29 |
| 5.14 | Dividends on Company Securities | 29 |

**ARTICLE 6** ................................................................ 31

Amount of Payments to Participants ........................................ 31

| | | |
|---|---|---|
| 6.1 | General Rule | 31 |
| 6.2 | Retirement | 31 |
| 6.3 | Death | 31 |
| 6.4 | Disability | 31 |
| 6.5 | Vesting | 32 |
| 6.6 | Other Severance | 32 |
| 6.7 | Years of Service | 33 |
| 6.8 | Restoration of Forfeitures | 34 |

**ARTICLE 7** ................................................................ 35

Distributions ............................................................. 35

| | | |
|---|---|---|
| 7.1 | Distributions to Married Participants | 35 |
| 7.2 | Distributions to Unmarried Participants | 36 |
| 7.3 | Survivor Annuity | 37 |
| 7.4 | Annuity Distributions | 40 |
| 7.5 | Optional Forms of Distribution | 40 |
| 7.6 | Valuation of Account | 42 |
| 7.7 | Commencement of Distribution | 42 |
| 7.8 | Minimum Amount of Distributions | 45 |
| 7.9 | Determination of Beneficiaries | 47 |
| 7.10 | Deferred Distributions | 48 |
| 7.11 | Single Sum Payment of Certain Benefits | 48 |
| 7.12 | Form of and Consent to Election | 48 |
| 7.13 | Unclaimed Distributions | 50 |
| 7.14 | Form of Distributions | 50 |
| 7.15 | Facility of Payment | 51 |
| 7.16 | Company Purchase of Company Securities | 51 |
| 7.17 | Distributed Company Securities - Right of First Refusal | 56 |
| 7.18 | Other Rights | 58 |
| 7.19 | Direct Rollovers of Certain Benefits | 58 |
| 7.20 | Diversifying Distributions | 60 |

ARTICLE 8 ................................................................................. 65
    Top-Heavy Plan Requirements ................................................. 65
    8.1       Definition of Top-Heavy Plan ................................. 65
    8.2       Top-Heavy Plan Requirements ................................ 66
    8.3       Definitions for Purposes of this Article .................... 68
    8.4       Cessation of Top-Heavy Requirements ..................... 69

ARTICLE 9 ................................................................................. 70
    Powers and Duties of Plan Committee ...................................... 70
    9.1       Plan Committee ....................................................... 70
    9.2       Powers and Duties of Committee ............................. 72
    9.3       Committee Procedures ............................................. 74
    9.4       Consultation with Advisors ..................................... 74
    9.5       Records and Reports ............................................... 75
    9.6       Investment of Trust Assets ...................................... 75
    9.7       Obligations of Committee ....................................... 75

ARTICLE 10 ............................................................................... 77
    Trustee and Trust Fund ............................................................ 77
    10.1     Trust Fund ............................................................. 77
    10.2     Payments to Trust Fund and Expenses ..................... 77
    10.3     Trustee's Responsibilities and Committee's Directions ........... 77
    10.4     Reversion to the Employers ..................................... 78
    10.5     Voting of Company Securities and Other Related Rights ......... 78

ARTICLE 11 ............................................................................... 82
    Amendment or Termination ...................................................... 82
    11.1     Amendment to Conform with Law ........................... 82
    11.2     Other Amendments ................................................. 82
    11.3     Termination ........................................................... 82
    11.4     Form of Amendment or Termination ........................ 83
    11.5     Limitations on Amendments .................................... 84
    11.6     Level of Benefits Upon Merger ................................ 85
    11.7     Vesting Upon Termination; Liquidation of Trust .................. 85
    11.8     AMSTED Claims Procedure .................................... 86

ARTICLE 12 ............................................................................... 89
    Adoption by Affiliates ............................................................. 89
    12.1     Adoption of Plan .................................................... 89

| 12.2 | Agents for Employer | 89 |
|------|---------------------|-----|
| 12.3 | Adoption of Amendments by Other Employers | 89 |
| 12.4 | Termination | 90 |
| 12.5 | Data to be Furnished by Employers | 90 |

ARTICLE 13 ............................................................................................. 91

Miscellaneous ......................................................................................... 91

| 13.1 | No Guarantee of Employment, etc. | 91 |
|------|-----------------------------------|-----|
| 13.2 | Rights of Participants and Others | 91 |
| 13.3 | Qualified Domestic Relations Order | 91 |
| 13.4 | Controlling Law | 92 |
| 13.5 | Severability | 92 |
| 13.6 | Notification of Addresses | 92 |
| 13.7 | Gender and Number | 93 |

SUPPLEMENT A

    Special Rules Applicable to Employees of Advanced Products Corporation,
Varlen Corporation and other related Affiliates

# ARTICLE 1

## General

### 1.1     Purpose

It is the intention of the Company to continue to provide for the administration of an employee stock ownership plan as defined in Section 407(d)(6) of ERISA and Section 4975(e)(7) of the Code, the AMSTED Industries Incorporated Employees' Stock Ownership Plan (the "Plan"), and a Trust Fund in conjunction therewith for the benefit of eligible employees of the Employers, in accordance with the provisions of Sections 401 and 501 of the Code and other provisions of law relating to defined contribution employee stock ownership plans. This Plan is an employee stock ownership plan intended to invest primarily in employer securities. The Plan also is a stock bonus and a money purchase plan. Except as provided in Sections 5.9(d) and 10.4, upon the transfer by the Employers of any funds to the Trust Fund in accordance with the provisions of this Plan, all interest of the Employers therein shall cease and terminate, and no part of the Trust Fund shall be used for, or diverted to, purposes other than the exclusive benefit of Participants and their beneficiaries.

### 1.2     Source of Funds

The Trust Fund shall be created, funded and maintained by contributions of the Employers, Qualified Loans and such net earnings as are obtained from the investment of the funds of the Trust Fund.

### 1.3     Scope of Plan Coverage

Unless specifically provided otherwise in this document, the provisions of the Plan as amended and restated shall be effective as of October 1, 1999. Except as may be required by ERISA or the Code, the rights of any person whose status as an employee has terminated with respect to all Employers shall be determined pursuant to the Plan as in effect on the most recent date such employment terminated, unless a subsequently adopted provision of the Plan is made specifically applicable to such person.

## 1.4     Definitions

Certain capitalized terms have the respective meanings set forth below.

Account.  "Account" means a Participant's share in the Trust, including but not limited to all shares (or fractional shares) of Company Securities released from the Suspense Account and allocated to such Participant.  A Participant's Account shall consist of a Company Securities Account and, if applicable, a Common Fund Account.

Affiliate.  "Affiliate" means any corporation or enterprise, other than the Company, which, as of a given date, is a member of the same controlled group of corporations, the same group of trades or businesses under common control or the same affiliated service group, determined in accordance with Sections 414(b), (c), (m), or (o) of the Code, as is the Company.  For purposes of applying the limitations of Section 415 of the Code set forth in Article 5, "Affiliate" shall include any corporation or enterprise, other than the Company, which, as of a given date, is a member of the same controlled group of corporations or the same group of trades or businesses under common control, determined in accordance with Sections 414(b) or (c) of the Code as modified by Section 415(h) thereof, as is the Company.

Allocation Date.  "Allocation Date" means each September 30.

Annuity Starting Date.  "Annuity Starting Date" means with respect to any Participant the first day of the first period for which the Participant's Account under the Plan is payable to him as an annuity, or, if not payable in the form of an annuity, the first day on which all events have occurred which entitle the Participant to a distribution under the Plan.

Code.  "Code" means the Internal Revenue Code of 1986, as from time to time amended.

Committee.  "Committee" means the committee described in Section 9.1.

Common Fund.  "Common Fund" means a separate investment fund which may be maintained under the Trust consisting of Plan assets other than Company

Securities. The Common Fund shall be the sum of all Common Fund Accounts held in the Trust.

Common Fund Account. "Common Fund Account" means an Account credited with a share of Plan assets other than Company Securities.

Company. "Company" means AMSTED Industries Incorporated, a Delaware corporation, or any successor thereto.

Company Securities. "Company Securities" means common stock issued by the Company or by an Affiliate that may from time to time be designated by the Committee, which stock is either (a) common stock readily tradable on an established securities market, or (b) if (a) does not exist, common stock that has both voting power equal to or in excess of that class of Company common stock with the greatest voting power, and dividend rights equal to or in excess of that class of Company common stock with the greatest dividend rights, or (c) noncallable preferred stock that is convertible at any time, at a reasonable conversion price, into stock described in (a) or (b) above; provided, however, that such term shall include only "employer securities" as defined in Section 409(1) of the Code that are "qualifying employer securities" as defined in Section 407(d)(5) of ERISA.

Company Securities Account. "Company Securities Account" means an Account credited with Company Securities that have been released from the Suspense Account.

Company Securities Fund. "Company Securities Fund" means the assets maintained under the Trust consisting of all Company Securities Accounts which hold allocated Company Securities and the Suspense Account which holds unallocated Company Securities.

Considered Compensation. A Participant's "Considered Compensation" for any Plan Year is the Participant's Total Compensation paid to him in such Plan Year while he was a member of the group of employees described in Section 2.1, including the remuneration described in (i), and excluding the remuneration described in (ii).

(i)  Base wages; commissions; cost-of-living allowance
(COLA); incentive compensation (Tier I and Tier II);
funeral pay; holiday pay; employer paid jury duty pay;
employer paid military training pay; overtime; piece work
incentive; employer paid safety meeting pay; employer paid
shift meeting pay; shift premium; Stock Value Appreciation
Plan (SVAP) amounts; employer paid training meeting pay;
vacation pay; attendance bonus; Christmas bonus; service
awards; severance pay; taxable shoe, clothing, and tool
allowances; suggestion awards; supplemental lay-off
benefits paid through payroll of the Company or Affiliate;
transfer supplements; taxable tuition reimbursements;
gainsharing pay; fire brigade duty pay; taxable perquisites;
short term disability (STD) benefits paid at 100% of base
pay; any other taxable compensation defined as wages
within the meaning of Section 3401(a) of the Code; pre-tax
employee cost sharing in any program to which Section 125
of the Code applies; and deferrals or contributions which
are not includable in gross income under Section 402(g) of
the Code.

(ii)  Supplemental retirement benefits; past service retirement
benefit (PSRB); limited early retirement bonus (LEROS);
payments pursuant to limited period early retirement
program or other retirement incentive programs; any
payments pursuant to a non-qualified program of deferred
compensation; short term disability benefits (STD) paid at
60% of base pay; all third party payments for disability;
long term disability payments (LTD); workers'
compensation benefits; supplemental lay-off benefits paid by
a third party; lawsuit settlements; expatriate pay; non-
taxable tuition reimbursements; moving expense
reimbursements; amounts credited or paid under the Amsted
Stock Appreciation Rights Plan (SAR); imputed income
associated with the value of group life insurance coverage;
and any other items, except those specifically listed in (i)
above, which fall outside the definition of wages within the
meaning of Section 3401(a) of the Code.

Considered Compensation shall be subject to the limitation of Section 5.11

Eligible Participant.  An "Eligible Participant" is a Participant who is eligible to share in an allocation as of a given Allocation Date pursuant to Section 5.6.

Employer.  "Employer" means the Company or any Affiliate which, with the approval of the Company or the Committee, adopts this Plan in accordance with Article 12 for the benefit of its eligible employees.

Employment Commencement Date.  An employee's "Employment Commencement Date" is the first date on which the employee performs duties for the Company or an Affiliate; provided, however, that in the case of an employee who returns to service following his Severance Date, as defined below, the employee's "Employment Commencement Date" is the first date on which he performs duties for the Company or an Affiliate following such Severance Date.

ERISA.  "ERISA" means the Employee Retirement Income Security Act of 1974, as from time to time amended.

Highly Compensated Employee.  Any employee who: (a) at any time during the Plan Year or the preceding plan year was a 5 percent owner; or (b) during the preceding Plan Year, received compensation (as defined below) from the Company or an Affiliate in excess of $80,000 (or such greater amount as may be determined by the Secretary of the Treasury), and (if the Company elects) was in the top-paid 20% of the employees for such year.  For purposes of determining an individual's status as a Highly Compensated Employee, his "compensation" for a Plan Year means an amount equal to his Total Compensation for that Plan Year.

Limitation Year.  "Limitation Year" means the Plan Year; provided, however, that the term "Limitation Year" may also refer to 12-month periods prior to the first Plan Year, all such years beginning on October 1 and ending on the following September 30.

Married Participant. A "Married Participant" is a Participant who has a Spouse as of his Annuity Starting Date.

Member of a Collective Bargaining Unit. "Member of a Collective Bargaining Unit" means any employee of an Employer who is included in a collective bargaining unit and whose terms and conditions of employment are covered by a collective bargaining agreement if there is evidence that retirement benefits were the subject of good-faith bargaining between representatives of such employee and his Employer, unless such collective bargaining agreement makes this Plan applicable to such employee, and the Trustee and the Committee have consented to a Plan amendment making the Plan so applicable.

Normal Retirement Date. A Participant's "Normal Retirement Date" shall be the Participant's attainment of age 65.

One-Year Break in Service. A "One-Year Break in Service" is a one-year period, commencing on an employee's Severance Date, during which such employee does not perform duties for the Company or an Affiliate.

Participant. A "Participant" is (a) a current employee of an Employer who has become eligible to participate in the Plan pursuant to section 2.1, or (b) a former employee for whose benefit an Account in the Trust Fund is maintained.

Plan Administrator. "Plan Administrator" means the individual or individuals authorized by the Committee pursuant to Section 9.2(h) to perform certain duties under the Plan. In the absence of any such authorization, the Plan Administrator shall be the Committee.

Plan Year. A "Plan Year" is a 12-month period beginning on October 1 and ending on September 30. The first Plan Year began on October 1, 1984.

Qualified Defined Benefit Plan. A "Qualified Defined Benefit Plan" is any Qualified Plan which is a defined benefit plan within the meaning of Section 414(j) of the Code.

Qualified Defined Contribution Plan. A "Qualified Defined Contribution Plan" is any Qualified Plan which is a defined contribution plan within the meaning of Section 414(i) of the Code.

Qualified Joint and Survivor Annuity. A "Qualified Joint and Survivor Annuity" is an annuity for the life of a Participant with payments continued upon the death of the Participant for the life of his spouse in an amount which is 50 percent of the amount payable while the Participant was living. The Qualified Joint and Survivor Annuity is a form of benefit which shall in all cases be purchased with funds that are otherwise payable to the Participant from the Plan, in accordance with Section 7.1.

Qualified Loan. A "Qualified Loan" means any loan to the Plan or Trust not prohibited by Section 4975(c) of the Code or section 406 or 407 of ERISA, including any loan which meets the requirements of Section 4975(d)(3) of the Code and Section 408(b)(3) of ERISA and regulations promulgated thereunder, the proceeds of which are used within a reasonable time after receipt to acquire Company Securities, to repay such loan, or to refinance a prior Qualified Loan.

Qualified Plan. A "Qualified Plan" is an employee benefit plan which is maintained by the Company or an Affiliate and which meets the requirements of Section 401 of the Code irrespective of whether or not the Internal Revenue Service has issued a determination that such plan meets such requirements. The term "Qualified Plan" shall exclude to the extent permitted by law a plan organized and existing outside the United States which is maintained by the Company or an Affiliate and which would be administered as a Qualified Plan as described above if it were organized and existing within the United States.

Required Distribution Date. A Participant's "Required Distribution Date" is April 1 of the calendar year next following the later of the calendar year in which the Participant attains age 70-1/2 or the calendar year in which the Participant's employment with the Company and all Affiliates terminates (such year shall be referred to as the "Required Distribution Year"); provided, that the Required Distribution Date of a Participant who is a 5 percent owner of the Company (as defined in Code Section 416) is April 1 of the calendar year next following the calendar year in which such Participant attains age 70-1/2. A Participant who attains age 70-1/2 prior to January 1,

1999, may elect to begin receiving benefits on April 1 of the calendar year in which he attains age 70-1/2.

Retiree. "Retiree," "Retirement," or "Retire," whether or not capitalized, when used in the Plan or in the course of Plan administration, means a Participant's most recent Severance Date occurring on or after the date he has attained age 65.

Severance Date. An employee's "Severance Date" with respect to employment with the Company and all Affiliates is the earlier of

    (a)    the date on which he resigns, is discharged, retires or dies, or

    (b)    the first anniversary of the first day of a period in which the employee remains absent from service (with or without pay) with the Company or an Affiliate for any other reason; provided, however, that in the case of an employee who is absent from service beyond the first anniversary of the first day of absence by reason of a maternity or paternity absence, the employee's Severance Date shall be the second anniversary of the first date of such absence. For purposes of the foregoing proviso, a maternity or paternity absence is an absence from work:

        (i)    by reason of the pregnancy of the employee;

        (ii)    by reason of the birth of a child of the employee;

        (iii)    by reason of the placement of a child with the employee in connection with the adoption of such child by the employee; or

        (iv)    for purposes of caring for such child for a period beginning immediately following such birth or placement.

-8-

Any employee requesting credit for such maternity or paternity absence shall promptly furnish the Plan Administrator such information as the Plan Administrator requires to show that the absence from work is a maternity or paternity absence and the number of days for which there was such an absence.

Special Account. A "Special Account" is a separate account within the Trust Fund which is credited on a temporary basis with assets held for allocation to Participants' Accounts.

Spouse. A "Spouse" is an individual who is legally married to a Participant.

Survivor Annuity. A "Survivor Annuity" is an annuity payable to the surviving spouse of a Participant for the period of her lifetime in accordance with Section 7.3.

Suspense Account. The "Suspense Account" is the account within the Trust Fund which is credited with Company Securities which have never been allocated to a Participant's Account and consists of Company Securities acquired with the proceeds of a Qualified Loan, cash contributions to be used to repay Qualified Loans, and earnings on unallocated Company Securities and contributions. The proceeds from the sale or exchange of Company Securities held in the Suspense Account shall be treated as provided in Section 5.3(d).

Total Compensation. A Participant's "Total Compensation" for a period is his total remuneration from the Company and all Affiliates in the nature of wages as defined in Section 3401(a) of the Code and reflected on the payroll records of the employer, determined in accordance with Section 415(c)(3) of the Code and the regulations thereunder, including any elective deferral (as defined in Section 402(g) of the Code) and any amount contributed or deferred by the Company at the Participant's election which is excludable from income under Sections 125 or 457 of the Code, but determined without regard to any rules that limit remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Section 3401(a)(2) of the Code). Such amount shall include the Participant's base pay as recorded in the payroll records of the Company or

any Affiliate, all payments during such period under an incentive compensation plan, commissions, overtime pay, shift premiums, payments under a Stock Value Appreciation Plan, and cost-of-living allowances, but (in accordance with regulations prescribed by the Secretary of the Treasury) excluding:

(i)    Contributions made by the Company or an Affiliate to a plan of deferred compensation to the extent that such contributions are not included in the gross income of the Participant in the year made, and any distribution from any such plan other than an unfunded non-qualified plan (which distributions received by an employee pursuant to an unfunded, non-qualified plan shall, to the extent permitted by Internal Revenue Service Regulation §1.415-2(d)(3)(i), be deemed part of Total Compensation in the year such amounts are includable in the employee's gross income);

(ii)    Amounts realized from the exercise of a nonqualified stock option or stock appreciation rights other than those with respect to the Stock Value Appreciation Plan described above, or when restricted stock either becomes freely transferable or free from a substantial risk of forfeiture;

(iii)    Amounts realized from the disposition of stock acquired under a qualified stock option; and

(iv)    Other amounts which receive special tax benefits; provided, however, that the determination of Total Compensation shall in all events be consistent with Internal Revenue Service Regulation §1.415-2(d). Total Compensation may include foreign earned income as described in Internal Revenue Service Regulation §1.415-2(d)(2) and may include de minimis compensation as described in Internal Revenue Service Regulation §1.415-2(d)(5)(ii) which is earned but not paid in the applicable period.

Trust.  "Trust" means the Trust referred to in Article 10.

Trustee.  "Trustee" means the Trustee under the Trust.

Trust Fund.  "Trust Fund" means the aggregate of all assets of the Plan. The Trust Fund shall include the Company Securities held by the Trustee and any other assets held by the Trustee in the Common Fund.

Unmarried Participant.  An "Unmarried Participant" is any Participant who is not a Married Participant.

Valuation Date.  Each September 30 and such additional dates as the Committee shall direct shall be a "Valuation Date."  Effective September 30, 2000, "Valuation Date" shall be each December 31, March 31, June 30 and September 30, and such additional dates as the Committee shall direct.  The Committee may establish additional Valuation Dates at such times or with respect to such events as the Committee determines to be likely to have a material effect on the valuation of the Company Securities.  For purposes of this Plan, a Participant's or beneficiary's interests in the Trust Fund as of any date shall be based on the value of his Account as of the Valuation Date coinciding with or immediately preceding the date as of which such determination is made.

Year of Service.  A "Year of Service" is the unit of service credited to an employee in accordance with Section 6.7.

## ARTICLE 2

## Eligibility and Participation

### 2.1     Eligibility Requirements

Every individual who is a Participant on October 1, 1999 shall continue as such subject to the provisions of the Plan. Every other individual who is employed by an Employer shall be eligible to participate in this Plan on or after his Employment Commencement Date as of the earliest date on which he is employed in the United States by an Employer, is not a Member of a Collective Bargaining Unit, and is not excluded pursuant to Section 2.2. For all purposes of the Plan, an individual shall be an employee of or be employed by the Company for any Plan Year only if such individual is treated by the Company for such Plan Year as its employee for purposes of employment taxes and wage withholding for Federal income taxes, regardless of any subsequent reclassification by the Company, any governmental agency or court.

### 2.2     Leased Employees

A "leased employee" (as defined below) shall not be eligible to participate in the Plan. A "Leased Employee" means any person who is not an employee of an Employer, but who has provided services for an Employer under primary direction or control by the Employer, on a substantially full time basis for a period of at least one year, pursuant to an agreement between the Employer and a leasing organization. The period during which a Leased Employee performs services for the Employer shall be taken into account as Years of Service for vesting purposes under Section 6.6 of the Plan if such leased employee becomes an employee of the Employer; unless (i) such Leased Employee is a participant in a money purchase pension plan maintained by the leasing organization which provides a non-integrated employer contribution rate of at least 10 percent of compensation, immediate participation for all employees and full and immediate vesting, and (ii) Leased Employees do not constitute more than 20 percent of the Employer's nonhighly compensated work-force.

-12-

## ARTICLE 3

### Contributions by Employers

**3.1    Contributions**

For each Plan Year the Employers shall contribute to the Trust on behalf of each Participant a money purchase pension contribution equal to 10% of the Considered Compensation for the Plan Year for each Participant who is eligible to share in the allocation pursuant to Section 5.6; provided, however, that such money purchase plan contribution shall be reduced by the amount of any forfeitures for the Plan Year pursuant to Section 5.7. For each Plan Year the Employers shall also contribute the Trust such amounts as the Company, in its discretion, may determine; provided that the Employers shall contribute in cash (including a transfer of Federal funds), in such a manner and in such amounts which, with the aggregate money purchase pension contribution made by the Employers as required pursuant to the immediately preceding sentence, shall reasonably permit the Trustee to make all payments due under any Qualified Loan, including such amounts as may be required to repay the principal amount of and interest on all outstanding Qualified Loans, to the extent such amounts have not previously been paid with the use of dividends on Company Securities; provided that no such contribution shall be required if it would be non-deductible under Code Section 404, constitute a non-exempt prohibited transaction under Code Section 4975, be prohibited by Section 406 or 407 of ERISA, or threaten the Plan's qualified status under Code Section 401(a). The Company shall also pay the Trustee's fees, costs and expenses (to the extent such fees, costs, and expenses are not paid directly by the Employers in one or more payments that do not involve the Trust). All contributions made under the Plan shall be delivered to the Trustee. The Trustee shall be accountable for all contributions received by it, but shall have no duty to require any contributions to be made to it, or to determine whether contributions received comply with the Plan or with any decision of the Committee, the Company or any other Employer providing therefor. The Committee shall have the responsibility to require the Employers to make contributions sufficient to permit the Plan to make payments when due on any Qualified Loan. Notwithstanding any other provision of the Plan to the contrary, all contributions of the Employers shall be deemed, and are hereby, conditioned upon the qualified status of the Plan and the deductibility of said contributions.

### 3.2 Application of ESOP Contributions and Dividends and Other Asset Management Matters

The Committee shall direct the Trustee concerning the timing and amount of payments to be made on any Qualified Loan, and shall specify whether and to what extent an Employer contribution is to be used to repay a Qualified Loan, is to be allocated to Participants' Accounts, is to be used to repurchase shares of Company Securities from terminating Participants, or is to be applied in some other manner. The Committee may also issue other instructions to the Trustee concerning the treatment of Company contributions, dividends on Company Securities, and other receipts of the Trustee to the extent not prohibited by the Plan, Trust, or applicable law. Directions and instructions to the Trustee shall be in accordance with Section 10.3 and shall not be inconsistent with the terms and conditions of any agreement between the Company and the Trustee governing the repayment of a Qualified Loan.

# ARTICLE 4

## Contributions by Participants

**4.1    No Participant Contributions**

No contributions by Participants shall be required or permitted under the Plan.

## ARTICLE 5

### Accounting Provisions and Allocations

**5.1    Participants' Accounts**

For each Participant there shall be maintained a separate Account which shall consist of a Company Securities Account and, if applicable, a Common Fund Account. Each Account shall be credited as provided herein with contributions, repurchases, amounts released from the Suspense Account, forfeitures, dividends, interest and earnings of the Trust Fund and any other amounts allocated to such Account, and shall be charged with all distributions and losses of the Trust Fund allocated to such Account. For purposes of such credits and charges, the Trust Fund shall consist of a Company Securities Fund and a Common Fund. The Plan Administrator shall have authority to divide each Account into subaccounts to reflect the various categories of assets credited to the Account, or to reflect such other Account classifications from time to time determined by the Plan Administrator. Said authority of the Plan Administrator shall include authority to change any Account designations previously made by the Plan Administrator or any other agent of the Plan.

**5.2    Common Interests in Funds**

Except as otherwise provided herein, the Accounts maintained within the respective Funds shall be common funds in which each Participant with credits therein shall have an undivided interest, and the value of each Participant's Account in a Fund shall be measured by the proportion that the net credit to his Account in such Fund bears to the total net credits to all such Accounts in that Fund as of the date that such share is being determined. For purposes of allocation of gains, losses, and periodic valuation, each Fund shall be considered separately. No Fund shall share in the gains or losses of any other, and no Fund shall be valued by taking into account any assets of, or distributions made from, any other Fund.

**5.3    Suspense Account**

(a)    Any Company Securities acquired with the proceeds of a Qualified Loan, cash contributions to be used to repay

-16-

Qualified Loans, and earnings on unallocated Company Securities and contributions shall be held in the Suspense Account and shall not be allocated to Participants' Accounts until released from the Suspense Account in accordance with subsection (b) or (c) of this Section 5.3. The proceeds from the sale or exchange pursuant to Section 5.12 of Company Securities held in the Suspense Account that consist of cash or property other than Company Securities shall be held and allocated in accordance with subsection (d) of this Section 5.3.

(b) As of each Allocation Date, a number of shares of such Company Securities shall be released from the Suspense Account, and with respect to each outstanding Qualified Loan, the number of such shares to be released shall be determined as follows:

(i) If a Qualified Loan is originated after February 27, 1996 and satisfies the conditions set forth in (A), (B); and (C) below, then the number of shares to be released from the Suspense Account with respect to that loan will equal the number of shares acquired with the proceeds of such Qualified Loan and held immediately before release in the Suspense Account multiplied by a fraction, the numerator of which is the amount of principal paid in respect of the relevant Qualified Loan for the period since the last Allocation Date up to and including the current Allocation Date, and the denominator of which is the sum of the amount of principal paid in respect of the relevant Qualified Loan for the period since the last Allocation Date and the amount of principal to be paid over the remaining term of such Qualified Loan.

(A) The Qualified Loan provides for annual payments of principal

-17-

and interest at a cumulative rate that is not less rapid at any time than level annual payments of such amounts for ten years;

(B)     The interest portion of any payment does not exceed the amounts which would be treated as interest under standard loan amortization tables; and

(C)     If the Qualified Loan is renewed, extended or refinanced, the sum of the expired duration of the Qualified Loan and the renewal, extension or new Qualified Loan period does not exceed ten years.

(ii)     If a Qualified Loan does not satisfy the conditions set forth in subsection (i) above, the numerator and denominator of the fraction described in (i) above and used to determine the number of shares to be released shall include interest payments.  If the interest rate under the Qualified Loan is variable, the interest to be paid on all future installments shall be computed by using the interest rate applicable on the last day of the Plan Year. Notwithstanding the foregoing, in the event such Qualified Loan shall be repaid in whole or in part with the proceeds of a subsequent Qualified Loan, such repayment shall not operate to release the Company Securities in the Suspense Account affected by such repayment, but any such release shall be effected pursuant to this Section 5.3(b) on the basis of payments of principal and interest on

such subsequent Qualified Loan and the remaining unpaid balance, if any, on the prior Qualified Loan.

Any payment made within the time prescribed by law for filing the Employer's federal income tax return for a period (including extensions) shall be deemed paid in such period, subject to other directions of the Committee or its delegate. For the purpose of paragraph (i)(A), any extension of credit to the Plan or Trust which consists of more than one component or "facility" shall be treated as a single unitary loan.

(c)     Cash dividends on Company Securities held in the Suspense Account that are received by the Trustee during a Plan Year shall be held and disposed of in accordance with the directions of the Committee.

(d)     If Company Securities or other assets held in the Suspense Account are sold or exchanged (other than in accordance with a sale pursuant to Section 10.5, such as a tender offer, and other than in accordance with the termination of the Plan), any proceeds of such sale or exchange that consist of cash and property other than Company Securities shall be held and disposed of in accordance with the directions of the Committee.

**5.4     Determination of Value of Trust Fund and of Net Earnings or Losses**

As of each Valuation Date, the Trustee shall determine for the period then ended the net earnings or losses of each respective Fund within the Trust Fund, which determination shall reflect accrued but unpaid interest, dividends, gains or losses realized from the sale, exchange or collection of assets, other income received, appreciation or depreciation in the fair market value of assets, administration expenses, and taxes and other expenses paid. The Trustee may employ such investment bankers, appraisers, advisors or other agents as the Trustee, in its sole discretion, reasonably deems appropriate to assist the Trustee in valuing the Trust Fund and related activities, and the Trustee may pay their fees and expenses, which shall be deemed to be expenses of the Trust. Gains or losses realized and adjustments for appreciation or depreciation

in fair market value shall be computed with respect to the difference between such value as of the preceding Valuation Date or date of purchase, whichever is later, and the value as of the date of disposition or the current Valuation Date, whichever is earlier.

### 5.5 Dividends on Allocated Company Securities; Allocation of Net Earnings or Losses

(a) Any cash dividends on Company Securities received by the Trustee, and any Company Securities received by the Trustee as a result of a stock split or dividend or as a result of a reorganization or other recapitalization of the Company, shall be held and disposed of in accordance with the directions of the Committee.

(b) As of each Valuation Date and after first giving effect to the foregoing provisions, any net earnings or losses of each respective Fund within the Trust Fund realized since the preceding Valuation Date shall be allocated to each Account with credits in such Fund, to the Suspense Account, and to any Special Account, respectively, in proportion to the amount which the then value of such Account with credits in such Fund, the Suspense Account, and any Special Account, respectively, bears to the then total value of all such Accounts.

### 5.6 Eligibility to Share in Allocations

The following described Participants shall be eligible to share in the allocation of Employer contributions (other than those used to repay a Qualified Loan) and forfeitures (other than those used to reduce the money purchase plan contribution) and Company Securities being released from the Suspense Account as of an Allocation Date:

(a) Any Participant who as of such Allocation Date is then employed by an Employer (i.e., has not incurred a Severance Date) in a class of employees eligible under Section 2.1 to participate in the Plan.

-20-

(b)    Any Participant who incurs a Severance Date (i.e., whose most recent Severance Date occurs) during the same Plan Year as the Allocation Date (i) at a time when he had attained age 55 or 30 Years of Service, or (ii) by reason of death or disability, as defined in Section 6.4.

(c)    Any Participant who does not incur a Severance Date during the Plan Year in which the Allocation Date occurs but who is not as of the Allocation Date actively employed in any class of employees of an Employer covered by the Plan pursuant to Section 2.1 solely because he is:

    (i)    on lay-off status;

    (ii)    on an authorized leave of absence;

    (iii)    absent due to a temporary disability;

    (iv)    absent due to service in the armed services of the United States;

    (v)    absent due to participation in a required academic segment of a co-operative training program;

    (vi)    transferred into a class of employees which results in his being a Member of a Collective Bargaining Unit or employed outside the United States; or

    (vii)    absent from active employment in a class of employees in which he is customarily employed and which is covered by the Plan pursuant to Section 2.1, with the consent of his Employer.

A Participant who is eligible to share in Employer contributions and forfeitures and Company Securities shall be known as an "Eligible Participant."

**5.7    Forfeitures**

(a)    The sum of amounts which have been deemed forfeitures since the last Allocation Date shall be (i) used to reduce the money purchase plan contribution due in accordance with Section 3.1, and then, to the extent any forfeitures remain, (ii) allocated as of the following Allocation Date among the Accounts of Eligible Participants.

(b)    Subject to the provisions of subsection (c), the Plan Administrator shall have authority to account for forfeitures allocated within the Plan as the Plan Administrator deems necessary or appropriate.

(c)    (i)    In the case of Company Securities acquired by the Plan with the proceeds of a Qualified Loan that are reallocated as forfeitures, such Company Securities shall not be subject to the limitations of Section 415 of the Code described in Section 5.9(c)(1) (provided that (i) the Company is not an S-corporation and (ii) no more than one-third of the Employer contributions for such Plan Year which are applied to pay principal or interest on a Qualified Loan is allocated to the Accounts of Highly Compensated Employees); and

(ii)    In the case of cash and any assets other than Company Securities that are reallocated as forfeitures, such assets shall be subject to the limitations of Section 415 of the Code described in Section 5.9(c)(i) and shall be accounted for on the basis of their current value as of the date of such reallocation.

(d)    If a portion of any Participant's Account is forfeited, Company Securities allocated pursuant to Sections 5.3 and 5.8 shall be forfeited only after the forfeiture of the assets credited to such Account other than such Company Securities; provided, however, that this subsection (d) shall

be deemed satisfied in any case where the Participant's distribution is made in cash.

**5.8**     **Allocation of Employer Contributions, Forfeitures and Released Company Securities**

(a)     Subject to the limitations of Section 5.9 and except as provided in Section 5.15, Company Securities released from the Suspense Account, Company Securities contributed by the Employers directly to the Trust, Employer contributions which are not made to repay a Qualified Loan, and any forfeitures not used to reduce the money purchase plan contribution for the Plan Year shall be allocated among the Accounts of the Eligible Participants as of each Allocation Date in the ratio that the Considered Compensation of each Eligible Participant since the last Allocation Date bears to the Considered Compensation of all Eligible Participants since the last Allocation Date.

(b)     As of each Allocation Date, the Plan Administrator shall allocate Plan Assets in the following categories and sequence:

(i)     pursuant to Section 6.8, allocate shares to the Accounts of individuals who have been reemployed;

(ii)     pursuant to Section 5.7, allocate forfeitures;

(iii)     allocate Company Securities or other assets, if any, previously held in the Accounts of individuals who received benefit distributions ("repurchased shares") which were not allocated in the previous Plan Year because of the limitations of Section 5.9;

(iv)     allocate Company Securities, if any, which were released from the Suspense Account pursuant to Section 5.3, but not allocated in

-23-

the previous Plan Year because of the limitations of Section 5.9;

(v)    allocate Company contributions for the period ending on such Allocation Date attributable to benefit distributions; and

(vi)    allocate Company contributions and other amounts, if any, for the period ending on such Allocation Date released from the Suspense Account pursuant to Section 5.3.

(c)    Notwithstanding any other provision of the Plan, and prior to the allocations described in subsection (b), in the event the Plan Administrator determines that an allocation of Company Securities or other assets is to be made to a Participant's Account because of a failure to make such allocation as of a prior Allocation Date, the Plan Administrator shall cause such allocation to be made utilizing Company Securities and drawing such shares, to the extent necessary: first, from shares that were available for allocation in the prior Plan Year but were not allocated because of the limits imposed by Section 5.9 or any similar limit (with the prior year's repurchased shares allocated first, and then shares released from the Suspense Account pursuant to Section 5.3, second); next, from the current Plan Year's available forfeitures in a manner similar to that described in Section 5.7; next, from the current Plan Year's repurchased shares available for allocation pursuant to a special Company contribution, provided, however, that such special contribution (and, therefore, such allocation) shall not be made to the extent it would be non-deductible pursuant to Section 404 of the Code (determined as if the current year's contribution had been made in the ordinary course); and, finally, to the extent necessary, from the current Plan Year's repurchased shares or shares held in the Suspense Account referred to in Section 5.3 pursuant to the regular contribution described in Section 3.1.

**5.9    Limitation on Annual Additions**

(a)    For purposes of Section 415 of the Code, for each Plan Year, the aggregate amount of Employer contributions and forfeitures shall be deemed to be allocated among the Accounts of the Eligible Participants in the ratio that the Considered Compensation of each Eligible Participant for the Plan Year bears to the Considered Compensation of all Eligible Participants for the Plan Year.  Such allocations shall then be adjusted, if necessary, to conform to the following provisions of this Section.

(b)    In no event shall the total annual additions in any Limitation Year commencing on or after the effective date of this restatement with respect to a Participant exceed the lowest of:

(i)    25% of his Total Compensation for the Plan Year, or,

(ii)    $30,000 (adjusted as provided in 5.9(f) below).

(c)    The term "annual additions" means the sum of:

(i)    Employer contributions and forfeitures; provided, however, that for each Plan Year in which the Company is not an S-corporation: (A) pursuant to Section 415(c)(6)(B) of the Code, that portion of Employer contributions which is applied to the payment of interest on a Qualified Loan and is deductible under Section 404(a)(9)(B) of the Code shall be charged against the amount allocable to Participants' Accounts and shall not be deemed to be an annual addition nor be taken into account in calculating the limitations described in this Section; and (B) in accordance with the provisions of Section 5.7, forfeitures of Company Securities acquired

with the proceeds of a Qualified Loan shall not be taken into account in calculating the limitations described in this Section. Any annual additions based on Employer contributions in connection with the repurchase of Company Securities from a Participant or beneficiary receiving a distribution from the Plan shall be determined on the basis of the value of such Company Securities utilized in such repurchase;

(ii)     Employer contributions and forfeitures allocated to the Participant's accounts in any other Qualified Defined Contribution Plan;

(iii)    the Participant's non-deductible contributions to any Qualified Defined Contribution Plan;

(iv)    amounts derived from contributions paid or accrued after December 31, 1985, in taxable years ending after such date, which are attributable to post-retirement medical benefits allocated to the separate account of a key employee, as defined in Section 419A(d)(3) of the Code, under a welfare benefit fund, as defined in Section 419(e) of the Code, maintained by the Company or an Affiliate; and

(v)     amounts allocated after March 31, 1984 to an individual medical account, as defined in Section 415(1)(1) of the Code, which is part of a Qualified Defined Benefit Plan.

The term "Annual Additions" shall not include dividends on Company Securities described in Section 5.15, nor proceeds of a sale or exchange pursuant to Section 5.12 of Company Securities or other assets from the Suspense Account which are allocated to the Participant's Account.

-26-

(d) (i) If any Participant's annual additions exceed the maximum limitations of subsection (b), the Plan Administrator shall coordinate with the plan administrators of the other Qualified Defined Contribution Plans to cause the Participant's annual additions under any other Qualified Defined Contribution Plan to be reduced to the extent the Participant's annual additions exceed the maximum limitations.

(ii) Upon termination of the Plan, the amount remaining in the Trust that cannot be allocated to Participants for the Plan Year in which such termination occurs because of the maximum limitations on contributions and benefits under Section 415 of the Code (including the provisions of this Section 5.9) shall revert to the Company; provided that the amount of any such reversion shall be paid to the Company and simultaneously upon receipt by the Company to Participants who are actively employed by the Company or an Affiliate at any time during the Plan Year in which termination of the Plan shall occur, in an amount with respect to each such Participant equal to the portion of such reversion which each such Participant would have received under the provisions of the Plan for such Plan Year as an allocation had the maximum limitation on contributions and benefits under Section 415 of the Code and this Section 5.9 not applied to such allocation. Such payments to Participants shall be treated as benefits payable under an excess benefit plan within the meaning of Section 3(36) of ERISA. Any amount reverting to the Company that was held in the Trust in the form of Company Securities shall be paid by the Trustee to the Company and by the

Company to Participants in the form of
Company Securities.

(e) In no event shall more than one-third of the Employer
contributions as described in Section 404(a)(9) for any Plan
Year in which the Company is not an S-corporation be
allocated to the group of employees consisting of Highly
Compensated Employees with respect to that Plan Year. To
the extent that any allocation to such employees' Accounts
exceeds the amount described in the preceding sentence,
such excess shall be administered in accordance with
Internal Revenue Service Regulation §1.415-6(b)(6).

(f) The $30,000 amount referred to in 5.9(b) above shall be
adjusted annually for changes in the cost of living, or other
changes prescribed by law, all in accordance with applicable
law and regulations.

## 5.10  Priority of Payments

In the event there is more than one outstanding Qualified Loan, the
Committee shall determine the proper priority of payments with respect to such
Qualified Loans. The Committee shall also direct the Trustee as to the timing and
amount of payments or prepayments on any Qualified Loan.

## 5.11  Compensation Limitation

The Considered Compensation of any Participant for any Plan Year taken
into account for any purpose under the Plan shall not exceed $160,000 (or such other
amount prescribed by the Secretary of the Treasury in accordance with Section
401(a)(17) of the Code).

**5.12    Sale of Company Securities or Other Plan Assets**

     (a)    At the direction of the Committee, the Trustee shall sell or exchange Company Securities or other Plan assets on such terms and conditions as the Committee shall prescribe.

     (b)    The proceeds of such sale or exchange shall be held as assets of the Plan, subject to all the terms and conditions of the Plan and Trust and all requirements of applicable law, in accordance with the directions of the Committee.

**5.13    Valuation of Company Securities**

     The valuation of Company Securities shall be as set forth in the Restated Certificate of Incorporation of the Company resulting from the transactions contemplated under Section 5.12 of the Trust, or any successor to such certificate.

**5.14    Dividends on Company Securities**

     Upon receipt by the a Trustee of any dividends on Company Securities, the Trustee shall hold and dispose of such amounts in accordance with the instructions of the Committee, which instructions may include the designation of such amounts as deductible for corporate income tax purposes and the use of such amounts for repayment of a Qualified Loan or for payment to Participants.  For purposes of Plan administration, the Committee's instructions may include directions as to the treatment and classification of such dividends, including their non-recognition as annual additions under Code Section 415 and the allocation of additional Company Securities held in the Suspense Account to all Company Securities Accounts based on the Trustee's use of such dividends to repay a Qualified Loan.  To the extent required by Code Section 404(k)(2)(B) or other applicable provision, in the case of dividends intended to be used to repay a Qualified Loan, shares released from the Suspense Account by reason of such dividends shall be allocated as follows: (a) first, to the extent dividends on Company Securities allocated to participant accounts can be and are used to repay a Qualified Loan, Company Securities with a fair market value of not less than the amount of the dividends paid with respect to Company Securities allocated to Participants' Accounts shall be released from the Suspense Account and allocated to such Accounts pro rata according to the number of shares of Company Securities held in such Accounts on the dividend payment date, and (b) then any remaining Company Securities released from

the Suspense Account by reason of dividends paid with respect to Company Securities held in the Suspense Account shall be allocated pro rata according to the number of shares of Company Securities held in such Accounts on the dividend payment date, unless otherwise directed by the Committee.

## ARTICLE 6

### Amount of Payments to Participants

**6.1    General Rule**

Upon the retirement, disability, resignation or discharge of a Participant, or upon the occurrence of his Severance Date for any other reason, he, or in the event of his death, his beneficiary, shall be entitled to receive the nonforfeitable portion of his Account determined as hereinafter set forth. In addition, subject to the provisions of Section 7.20, a Participant who has attained age 55 and is credited with at least seven (7) years of Vesting Service shall be eligible to receive a portion of his Account as an in-service distribution for the purpose of diversifying such assets. All rights of Participants or of any other persons shall be subject to the provisions of Article 7 concerning the time and manner of making distributions.

**6.2    Retirement**

A Participant's forfeitable portion, if any, of his Account shall become nonforfeitable upon attainment of age 65, his Normal Retirement Date. If the retirement of a Participant is deferred beyond his Normal Retirement Date, he shall continue in full participation in the Plan and Trust Fund.

**6.3    Death**

As of the date any Participant shall die while in the employ of an Employer or Affiliate, the forfeitable portion, if any, of his Account shall become nonforfeitable.

**6.4    Disability**

A Participant's forfeitable portion, if any, of his Account shall become nonforfeitable when he becomes totally and permanently disabled. The term "totally and permanently disabled" means the total disablement of the Participant by bodily injury or disease so as to prevent him from engaging in any occupation or employment

-31-

for remuneration or profit; provided that such total disablement will, in the opinion of a qualified physician designated by the Committee, be permanent and continuous during the remainder of the Participant's lifetime.

**6.5    Vesting**

A Participant's nonforfeitable interest in his Account at any time prior to retirement, including disability retirement, or death shall be determined under Section 6.6.

**6.6    Other Severance**

If any Participant shall resign, or be discharged from the service of all Employers and Affiliates before his Account has otherwise become nonforfeitable under this Article, there shall become nonforfeitable none, a portion, or all of his Account determined as of his Severance Date in accordance with the following schedule, subject to Section 6.7:

| If His Years Of Service Shall Have Been | The Nonforfeitable Percentage Of His Account Shall Be |
|---|---|
| Less than 3 | 0 |
| 3 but less than 4 | 20 |
| 4 but less than 5 | 40 |
| 5 but less than 6 | 60 |
| 6 but less than 7 | 80 |
| 7 or more | 100% |

In no event, however, shall an individual who was a Participant in the Plan prior to October 1, 1989 be credited with a nonforfeitable percentage that is less than the nonforfeitable percentage determined as of his Severance Date based on the vesting schedule of this Plan that was in effect on September 30, 1989. Participants who have separated from service prior to October 1, 1989 and are not reemployed with the Company or any Affiliate after that date shall remain subject to the vesting schedule of the ESOP as in effect on their date of separation. Any part of the Account of such

Participant which does not become nonforfeitable shall be treated as a forfeiture pursuant to Section 5.7.

### 6.7 Years of Service

(a) A "Year of Service" is a unit of service credited to an employee for purposes of determining the percentage of the balance in a Participant's Account which is nonforfeitable. An employee who is reemployed shall retain service credited to him in his previous employment with the Company and all Affiliates, except as otherwise provided in the Plan.

(b) (i) An employee shall be credited with one Year of Service for each full year in the period commencing on his Employment Commencement Date and ending on his Severance Date; provided, however, that an employee of Baltimore Aircoil Company, Inc. ("BAC") or any subsidiary of BAC shall also be credited for each period of employment prior to his Employment Commencement Date which was recognized as Credited Service under the defined benefit plan which covered employees of BAC and its subsidiary on May 20, 1985; and provided, further, that an employee of Broderick & Bascom Rope Company ("B & B"), a division of Macwhyte Company, shall also be credited for each period of employment prior to his Employment Commencement Date which was recognized as years of service for vesting purposes under the applicable plan of B & B as of December 6, 1983. An employee shall also be credited with 1/365 of a Year of Service for each additional day in such period for which he did not receive credit pursuant to the preceding sentence.

(ii)    A former employee who is reemployed and who performs duties for the Company or an Affiliate within one year after the date he last performed duties for the Employer or an Affiliate shall also be credited with 1/365 of a Year of Service for each day in the period commencing on his Severance Date and ending on his Employment Commencement Date following such Severance Date.

(c)    Notwithstanding any provision of this Plan to the contrary, contributions, benefits, and service credit with respect to qualified military service will be provided in accordance with Code Section 414(u).

## 6.8    Restoration of Forfeitures

If the Participant is reemployed by the Company or an Affiliate without incurring 5 consecutive One-Year Breaks in Service, the number of shares of Company Securities forfeited shall be restored to his Account as of the date of his reemployment and shall be deducted from the forfeitures that otherwise would be allocable for the Plan Year in which the reemployment occurred or, to the extent such forfeitures are insufficient, shall require a supplemental contribution from the entity which is his Employer as of his most recent reemployment.

# ARTICLE 7

## Distributions

**7.1    Distributions to Married Participants**

(a)    Subject to the other provisions of this Article, the Account in the Trust Fund distributable to any Married Participant shall be distributed in the form of a Qualified Joint and Survivor Annuity unless such Participant has properly elected pursuant to subsection (b) below not to receive his Account distribution in that form.

(b)    A Married Participant may elect not to receive a Qualified Joint and Survivor Annuity with the written consent of his Spouse as provided under Section 7.12(b). Such election may be made after the Participant receives the notice described in subsection (c) below and within his Election Period. A Participant's "Election Period" is the 90-day period described in the last sentence of Section 7.1(c). Any election so made may be revoked at any time during the Election Period, and if so revoked, the Participant's benefit shall automatically be paid in the form of a Qualified Joint and Survivor Annuity unless he again properly elects within the Election Period not to receive his benefit in such form. Elections and revocations may continue to be made under this Section throughout the Election Period.

(c)    The Plan Administrator shall furnish each Married Participant a general written explanation of (i) the terms and conditions of the Qualified Joint and Survivor Annuity, (ii) the Participant's right to make, and the effect of, an election to waive it, (iii) the rights of the Participant's Spouse, (iv) the Participant's right to revoke an election to waive the Qualified Joint and Survivor Annuity, and (v) the effect of such a revocation. Such explanation shall also include a general description of the optional forms of benefits available to the Participant under the Plan, and information explaining the relative value of such optional forms of

-35-

benefits. This general explanation shall be furnished to a Participant not more than 90 days before the Participant's Annuity Starting Date.

(d)     If the Married Participant dies before his Annuity Starting Date, no annuity shall be payable to his Spouse pursuant to this Section and the benefit payable to such Spouse, if any, shall be determined under Section 7.3 or 7.9.

(e)     Effective April 26, 2000, the Qualified Joint and Survivor Annuity form of distribution described in this Section 7.1 will no longer be available unless (i) the Participant's Severance Date occurred on or before April 25, 2000 and (ii) an election for benefits, pursuant to Section 7.12, was received by the Plan Administrator on or before April 25, 2000. Distributions to all Participants shall be in the form set forth in Section 7.5.

**7.2     Distributions to Unmarried Participants**

(a)     Subject to the other provisions of this Article, the Account in the Trust Fund distributable to an Unmarried Participant shall be distributed in the form of an annuity providing the Participant with monthly payments for the period of his lifetime unless such Participant has elected in writing not to receive his Account distribution in that form.

(b)     Not more than 90 days before the Participant's Annuity Starting Date, the Plan Administrators shall furnish an Unmarried Participant a general written explanation of his right to waive the life annuity form of benefit in favor of an optional form of benefit which may be available to him. Such explanation shall also include a general description of the optional forms of benefits available to the Participant under the Plan, and information explaining the relative value of such optional forms of benefits.

(c)     An Unmarried Participant's election not to receive his benefits in the form of a life annuity must be made (and,

once made, may be revoked) after receiving the explanation described in (b) above and prior to the Annuity Starting Date in accordance with procedures established by the Plan Administrator.

(d) Effective April 26, 2000, the annuity form of distribution described in this Section 7.2 will no longer be available unless (i) the Participant's Severance Date occurred on or before April 25, 2000 and (ii) an election for benefits, pursuant to Section 7.12, was received by the Plan Administrator on or before April 25, 2000. Distributions to all Participants shall be in the form set forth in Section 7.5.

**7.3    Survivor Annuity**

(a) The Account in the Trust Fund distributable with respect to a deceased Participant who dies prior to his Annuity Starting Date and who had a Spouse on the date of his death shall be distributed in the form of an annuity providing the Participant's surviving Spouse with monthly payments for the period of her lifetime (a "Survivor Annuity") unless such Participant has elected pursuant to subsection (c) below not to have his Account so distributed in that form.

(b) The Plan Administrator shall furnish each Participant with a written explanation of (i) the terms and conditions of the Survivor Annuity, (ii) the Participant's right to make, and the effect of, an election to waive the Survivor Annuity, (iii) the rights of the Participant's Spouse, (iv) the Participant's right to revoke an election to waive the Survivor Annuity, and (v) the effect of such a revocation. Such explanation shall also include a general description of the optional forms of benefits available to the Participant under the Plan and information explaining the relative value of such optional forms of benefits. This general explanation shall be furnished during whichever of the following periods ends last:

(i)      the period beginning with the first day of the Plan Year in which the Participant attains age 32 and ending with the close of the Plan Year preceding the Plan Year in which he attains 35;

(ii)     the one-year periods preceding and succeeding the date the individual becomes a Participant; and

(iii)    the one-year periods preceding and succeeding the date of a Participant's separation of service in the case of a Participant who does so before attaining age 35 (provided, however, that if the Participant is later reemployed by the Company or an Affiliate such general explanation must again be furnished to him in accordance with (i), (ii) or (iii), as applicable).

(c)    A Participant shall be entitled to elect not to have a Survivor Annuity paid to his surviving Spouse. Such election may be made at any time during the Election Period described in subsection (d) below. To be effective, any such election shall require the consent of the Participant's Spouse as provided in Section 7.12(b). Any such election may be revoked by the Participant within the Election Period.

(d)    The Election Period shall commence on the first day of the Plan Year in which the Participant attains age 35 and shall end on the earlier of the date of the Participant's death or his Annuity Starting Date; provided, however, that any Participant who has not attained age 35 and who files properly executed election forms acceptable to the Plan Administrator prior to January 1, 1994, shall be deemed to have made the election referred to in subsection (c) within the Election Period described in this subsection; provided, further, that any such election filed before the first day of the Plan Year in which the Participant shall have attained

-38-

age 35 shall be deemed to have no effect on and after the first day of such Plan Year, and the Plan Administrator shall accept new elections effective on or after that date which are made in accordance with the otherwise applicable rules contained in this Section.

(e)     Once in effect, Survivor Annuity coverage under this Section shall remain in effect until the earliest of:

    (i)     the date the Participant is divorced from his Spouse;

    (ii)     the date the Participant's Spouse dies;

    (iii)     the Participant's Annuity Starting Date; or

    (iv)     the date the Participant effectively waives such Survivor Annuity coverage.

In the event coverage terminates pursuant to subsections (i) or (ii) above, such coverage automatically shall resume on the date the Participant remarries unless the Participant otherwise elects.

(f)     Notwithstanding the foregoing, the surviving Spouse of a deceased Participant may elect, after the death of the Participant, to receive the nonforfeitable balance of the Participant's Account in a single lump sum payment or other optional form of benefit, if applicable.

(g)     Effective April 26, 2000, the Survivor Annuity form of distribution described in this Section 7.3 will no longer be available to a Participant or Spouse unless (i) the Participant's Severance Date occurred on or before April 25, 2000 and (ii) an election for benefits, pursuant to Section 7.12, was received by the Plan Administrator on or before April 25, 2000. Distributions to all Participants shall be in the form set forth in Section 7.5.

### 7.4    Annuity Distributions

Benefits payable in the form of an annuity under Section 7.1, 7.2, or 7.3 may be paid by distributing to the Participant an annuity contract (or certificate evidencing such contract) purchased by the Trustee at the direction of the Plan Administrator. In securing such annuity contract, the Plan Administrator shall apply the proceeds of the nonforfeitable balance of the Participant's Account as of the Valuation Date coinciding with or immediately preceding the date such contract is purchased, and the proceeds used for the purchase shall be subject to any applicable costs, charges, or taxes associated with such transaction. Any such annuity contract shall be non-assignable and non-commutable. Delivery of any such contract shall be in full satisfaction of the rights of the distributee under this Plan, and upon the delivery of any such contract, the distributee shall not have any interest in the Trust Fund but shall look solely to the insurer issuing such contract for the payment of benefits.

Effective April 26, 2000, the annuity forms of distribution described in Sections 7.1, 7.2 and 7.3 will no longer be available unless (i) the Participant's Severance Date occurred on or before April 25, 2000 and (ii) an election for benefits, pursuant to Section 7.12, was received by the Plan Administrator on or before April 25, 2000. Distributions to all Participants shall be in the form set forth in Section 7.5.

### 7.5    Optional Forms of Distribution

(a)    Subject to the other provisions of this Article, any Account in the Trust Fund distributable to a Participant which is not distributable in the form of an annuity as provided in this Article 7 shall be distributed in one or more of the following ways, in accordance with applicable laws and regulations:

(i)    With respect to any Participant whose most recent Severance Date occurs on or after the date he has attained age 55 or 30 Years of Service, the Account shall be distributed, as the Participant may elect:

(A)    by payment in one lump sum as soon as permitted by law; or

(B)     by payment of a portion of the Account with the balance of the Account retained for payment at a later date; or

(C)     by deferral of payment of the entire Account.

(ii)    With respect to any Participant entitled to a distribution other than a Participant described in Section 7.5(a)(i), the Account shall be distributed in the manner described in (i)(A) or (C) above (subject to Section 7.11).

(iii)   In addition to the foregoing provisions of this subsection (a), a Diversifying Distribution option is available to certain Participants under the terms and conditions set forth in Section 7.20.

Any distribution described in this subsection (a) shall be subject to the other provisions of this Article as to the manner, form and timing of payment.

(b)     On or before April 25, 2000, distributions of less than the full balance of an Account pursuant to Section 7.5(a)(i)(B) above may be made as frequently as quarterly. Any distribution payment of less than the entire Account pursuant to Section 7.5(a)(i)(B) shall be in an amount that equals or exceeds the greater of $5,000 or 20% of the value (as of the applicable Valuation Date) of the entire Account (as of the Participant's Severance Date). In any Plan Year in which a Participant retains a balance in his Account after his Severance Date, he shall be entitled to request the Plan Administrator to pay all or a portion of such balance, provided that such distribution payment equals or exceeds the greater of $5,000 or 20% of the value (as of the applicable Valuation Date) of the entire Account (as of the Participant's Severance Date), and provided, further, that

the Participant makes such request in writing on a form in the manner, and at the times prescribed by the Plan Administrator.

(c)     Effective April 26, 2000, unless a Participant has (i) incurred his Severance Date on or before April 25, 2000 and (ii) an election for benefits, pursuant to Section 7.12, was received by the Plan Administrator on or before April 25, 2000, the normal form of distribution under the Plan shall be a lump sum, and distributions of less than the full balance of an Account pursuant to Section 7.5(a)(i)(B) above may be made as frequently as annually in an amount that equals the greater of $5,000 or 20% of the value (as of the applicable Valuation Date) of the entire Account (as of the Participant's Severance Date).

## 7.6     Valuation of Account

For the purpose of determining the amount of any partial or complete distribution of a benefit under the Plan pursuant to this Article 7, the distribution shall be based on the Account value determined as of the Valuation Date coinciding with or first preceding the date of payment.

## 7.7     Commencement of Distribution

(a)     Distributions to a Participant from his Account in the Trust Fund, in an amount not less than that determined in accordance with Section 7.8 below, must commence as of the Participant's Required Distribution Year, pursuant to Code Section 401(a)(9).

(b)     Distributions required to be made to a Participant with respect to any calendar year must be made on or before the last day of that calendar year; except that distributions required to be made to a Participant with respect to his Required Distribution Year must commence not later than

his Required Distribution Date, pursuant to Code Section 401(a)(9).

(c)     Except as otherwise provided in this Section 7.7, distributions to a Participant from his Account in the Trust Fund normally will be made or commence no later than the 60th day after the close of the Plan Year in which his Normal Retirement Date occurs or, if later, the Participant's termination of employment with the Company and all Affiliates.

(d)     Effective July 18, 2000, if (i) a Participant's Severance Date occurred on or after July 18, 2000 or (ii) an election for benefits, pursuant to Section 7.12, was received by the Plan Administrator on or after July 18, 2000, then the distribution to a Participant of his Account will commence, unless the Participant elects a later date, as follows:

     (i)     as soon as administratively practical following the Participant's Severance Date due to retirement, death or disability under Sections 6.2, 6.3 or 6.4, or for any reason after the Participant has attained 55 years of age and 30 Years of Service (see Supplement A regarding Years of Service crediting for certain Participants); or

     (ii)     as soon as administratively practical following the fifth anniversary of the Participant's separation from employment under Section 6.6, unless the Participant is reemployed by an Employer before such year; provided that the distribution of the portion of a Participant's Account consisting of Company Securities (or the balances attributable to sale, exchange or transfer of such stock) that was acquired with a Qualified Loan that has not been fully repaid shall not commence until the Qualified Loan (and any Qualified Loan which repaid any portion of the original Qualified Loan) is fully paid, unless an

earlier date is otherwise required under either Section 401(a)(9) or 401(a)(14) of the Code.

(e)     Notwithstanding any provision of this Article 7 to the contrary, if the value of a Participant's Account exceeds $5,000, and

   (i)     if he is not a Married Participant, distribution of any portion of his Account shall not be made or commence prior to the date the Participant attains his Normal Retirement Date, or, if earlier, the date of his death, without his written consent; or

   (ii)    for distributions that commence on or before April 25, 2000, if he is a Married Participant, distribution of any portion of his Account shall not be made or commence prior to the date the Participant attains his Normal Retirement Date (or would have attained his Normal Retirement Date had he survived until that date) without the written consent of the Participant and the Participant's Spouse (or, if either the Participant or his spouse has died, the survivor).

(f)     Distribution of a Participant's Account to a beneficiary who is the surviving Spouse of the Participant shall be made, if so directed by the Spouse, within a reasonable time after the Participant's death, and, in any event, shall be made on or before the last day of the calendar year in which falls the later of (i) the date the Participant would have attained age 70-1/2 had he survived or (ii) the first anniversary of the Participant's date of death.  Distribution to any other beneficiary shall be made on or before the last day of the calendar year in which falls the 5th anniversary of the Participant's date of death.

(g)     Notwithstanding anything in this Section 7.7 to the contrary, if the amount of any distribution required to commence on a certain date cannot be ascertained by such date, a payment retroactive to such date may be made no later than 60 days after the earliest date on which such amount can be ascertained.

**7.8     Minimum Amount of Distributions**

(a)     With respect to a Participant's Required Distribution Year, and with respect to each calendar year thereafter, there shall be distributed to the Participant from his Account under the Trust Fund an amount not less than the quotient of A divided by B, where A equals the Adjusted Value of the Participant's Account as of the calendar year immediately preceding the calendar year with respect to which such distribution relates, as adjusted in accordance with subsection (b) below; and where B equals the Participant's Applicable Life Expectancy as of such calendar year. In no event, however, shall the foregoing divisor be less than one.

(b)     For purposes of subsection (a) above, the Adjusted Value of a Participant's Account as of any calendar year is equal to the value of such Account as of the last Valuation Date within that calendar year, reduced by the amount of any distributions made to the Participant during such calendar year after such last Valuation Date; provided, however, that solely for purpose of determining the amount of any required distribution to be made to a Participant for the calendar year immediately following his Required Distribution Year, the Adjusted Value of the Participant's Account as of such Required Distribution Year is the value of such Account determined in accordance with the foregoing, reduced by the amount, if any, distributed to the Participant after the end of such Required Distribution Year and on or before the Participant's Required Distribution Date, but only to the extent that the sum of the amounts distributed to the Participant during the period beginning on

the first day of his Required Distribution Year and ending on his Required Distribution Date does not exceed the required distribution amount for the Participant's Required Distribution Year.

(c)     A Participant's Applicable Life Expectancy shall be initially established as of his Required Distribution Year. For that purpose, the expected return multiple set forth in Table V of Internal Revenue Service Regulation §1.72-9 as in effect for that year shall be used. The Participant's initial Applicable Life Expectancy shall be determined by reference to such expected return multiple and the Participant's age as of his birthday which falls within his Required Distribution Year.

(d)     A Participant's Applicable Life Expectancy as of any calendar year subsequent to his Required Distribution Year shall be equal to his Applicable Life Expectancy determined as of the Required Distribution Year in accordance with subsection (c) above, reduced by one for each calendar year after such Required Distribution Year through and including the calendar year as of which such life expectancy is determined. In no event shall the Applicable Life Expectancy of a Participant as of any calendar year after his Required Distribution Year be subject to recalculation so as to reflect the actual life expectancy of the Participant.

(e)     If with respect to any calendar year, the amount distributed to a Participant exceeds the minimum amount required to be so distributed pursuant to the foregoing provisions of this Section 7.8, or if distributions are made to a Participant in any calendar year preceding his Required Distribution Year, the amount of any such distribution which exceeds the minimum required amount or which was made before such Required Distribution Year, as the case may be, shall not be credited to the Participant for purposes of reducing the amount required to be distributed to him with respect to any subsequent calendar year.

**7.9    Determination of Beneficiaries**

    (a)    Except as otherwise provided in this Section 7.9, the distributable balance of a deceased Participant's Account shall be paid to his surviving Spouse.

    (b)    The balance of a deceased Participant's Account shall be distributed to the beneficiaries effectively designated by the Participant. To be effective, the designation must be filed with the Plan Administrator in such written form as the Plan Administrator requires and may include secondary or successive beneficiaries; provided that any designation by a Participant who is married at the time of his death which fails to name his surviving spouse as the sole primary beneficiary shall not be effective unless such surviving Spouse has consented to the designation as provided in Section 7.12(b).

    (c)    If the beneficiary dies prior to receipt of such payment, the Participant's Account shall be distributed to any secondary or successor beneficiary designated by the Participant, or if none, to the estate of the last to die of the Participant and the beneficiary.

    (d)    (i)    If a Participant dies and, to the knowledge of the Plan Administrator after reasonable inquiry leaves no surviving Spouse, and has not filed an effective beneficiary designation or has revoked all such designations, or has filed an effective designation but the beneficiary or beneficiaries predeceased him, the distributable portion of the Participant's Account shall be paid to the executor or administrator of the Participant's estate.

            (ii)    If the beneficiary, having survived the Participant, shall die prior to the final and complete distribution of the Participant's Account, then the distributable portion of said Account shall be paid:

(A) to the secondary or successive beneficiary named in the most recent effective beneficiary designation filed by the Participant in accordance with such designation; or

(B) if no such beneficiary has been named, to the executor or administrator of the beneficiary's estate.

## 7.10 Deferred Distributions

To the extent a distribution to a Participant or to the beneficiary of a deceased Participant is deferred, the undistributed vested balance shall share in the net earnings or losses (including the net adjustments in the value of the Trust Fund) as provided in Section 5.5.

## 7.11 Single Sum Payment of Certain Benefits

Notwithstanding any other provision of this Plan to the contrary, in the event the distributable value of a Participant's Account does not exceed $5,000, the Plan Administrator shall direct the Trustee to pay such Account in the form of a single lump sum to the Participant or beneficiary so entitled, and the payment thereof shall be in full satisfaction of any liability of the Trust to such Participant or beneficiary; provided, however, that no distribution with respect to a Participant may be made pursuant to this Section after the Participant's Annuity Starting Date unless the Participant and the Participant's Spouse (or if the Participant has died, his surviving Spouse alone) consent to such distribution in writing as prescribed under Section 7.12(b).

## 7.12 Form of and Consent to Election

(a) Any election, revocation of an election, application for benefits or beneficiary designation made under the Plan shall not be effective unless it is (i) made on such form, if

-48-

any, as the Plan Administrator may prescribe for such purpose; (ii) in writing; (iii) signed by the Participant; and (iv) filed with the Plan Administrator.

(b) To be effective, any election or designation of beneficiary made under Sections 7.1(b), 7.3(c) or 7.7(e)(ii), respectively, by a married Participant must be consented to by his Spouse. Such consent must be in writing, must acknowledge the effect of the election, and must be witnessed by a notary public.

(c) In addition, an election to waive the Qualified Joint and Survivor Annuity or Survivor Annuity forms of benefit under Section 7.1 and 7.3, respectively, shall not be effective unless such election (i) specifically designates a beneficiary (or class of beneficiaries) and (ii) specifies the optional form of benefit elected in lieu of such annuity form. Once consented to by his Spouse, a Participant's designation of beneficiary or optional form of benefit may not be changed during the period she remains his Spouse without her further consent, unless the change is a reversion to the Qualified Joint and Survivor Annuity or the Survivor Annuity, as the case may be.

(d) Notwithstanding subsections (b) and (c) above, the consent of the Spouse of a Participant is not required if, at the time of filing such election, the Participant establishes to the satisfaction of the Plan Administrator that the consent of the Spouse cannot be obtained because there is no Spouse, such Spouse cannot be located, or by reason of such other circumstances as may be prescribed by regulations.

(e) Any consent of a Spouse (or establishment that the consent cannot be obtained) shall be effective only with respect to that Spouse.

**7.13    Unclaimed Distributions**

In the event any distribution cannot be made because the person entitled thereto cannot be located and the distribution remains unclaimed for 2 years after the distribution date established by the Plan Administrator, then such amount shall be treated as a forfeiture and applied in accordance with Section 5.7.  In the event such person subsequently files a valid claim for such amount, such amount shall be restored to the Participant's Account and distribution made in accordance with the applicable provisions of this Article 7.

**7.14    Form of Distributions**

Applicable corporate charter or bylaw provisions restrict ownership of substantially all outstanding Company Securities to employees or to a plan or trust described in Section 401(a) of the Code.  Accordingly, any distribution to a Participant or beneficiary shall be solely in cash, except that distributions shall be made in kind only if and to the extent that

(a)    the conditions of Section 7.20 apply (permitting a Diversifying Distribution as described therein),

(b)    the conditions of Section 7.16 apply (relating to the inability of the Company to redeem Company Securities from and provide cash to the Trustee),

(c)    the Plan is terminated pursuant to the provisions of Section 11.3.

Notwithstanding any other provision of this Plan to the contrary, if a Participant or beneficiary receives a distribution at any time the Company is an S-corporation, the entire distribution will be made in cash, or the Company will make the entire distribution in the form of Company Securities subject to the requirement that the Company Securities be immediately put to the Company as provided in Section 7.16(d).

### 7.15    Facility of Payment

When, in the Plan Administrator's opinion, a Participant or beneficiary is under a legal disability or is incapacitated in any way so as to be unable to manage his affairs, the Plan Administrator may direct the Trustee to make payments:

    (a)    directly to the Participant or beneficiary;

    (b)    to a duly appointed guardian or conservator of the Participant or beneficiary;

    (c)    to a custodian for the Participant or beneficiary under the Uniform Gifts to Minors Act;

    (d)    to an adult relative of the Participant or beneficiary; or

    (e)    directly for the benefit of the Participant or beneficiary.

Any such payment shall constitute a complete discharge therefor with respect to the Trustee and the Plan Administrator.

### 7.16    Company Purchase of Company Securities

    (a)    At any time that the Committee determines that the Trust Fund has insufficient cash to make any anticipated distributions, or for any other reason permitted by law, the Committee may direct the Trustee to sell to the Company such portion of the Company Securities in the Trust as the Committee believes reasonable under the circumstances. The purchase price to be paid for any such Company Securities shall be their fair market value determined as of the date of the transaction. The implementation of such sales shall be pursuant to one or more of the following arrangements as the Committee shall direct; provided, however, that such sales shall not be exercised in such a way as to incur liability under Section 16(b) of the Securities Act of 1934, as amended.

(i)     The Committee may direct the Trustee to put Company Securities to the Company on a Valuation Date in an amount sufficient to provide an amount of cash estimated in good faith by the Committee to be sufficient to make anticipated distributions from the Trust for payment of benefits or expenses until the next succeeding Valuation Date, or to effect any other result permitted by law.

(ii)    If permitted under applicable law, rulings and regulations, and not a prohibited transaction under Section 4975(c) of the Code or Section 406 or 407 of ERISA which is not exempted by a prohibited transaction exemption, the Committee may direct the Trustee to put Company Securities to the Company on a date other than a Valuation Date, and shall be paid therefor the fair market value of such Company Securities, determined as of the date of the transaction.

(iii)   If permitted under applicable law, rulings or regulations, and not a prohibited transaction under Section 4975(c) of the Code or Section 406 or 407 or ERISA which is not exempted by a prohibited transaction exemption, the Committee may cause the Employers to advance to the Trustee amounts needed to make distributions of benefits or payment of expenses. Such amounts shall be reimbursed by the Trustee to the Employers, without interest, as of the next succeeding Valuation Date, or as soon as practical thereafter, by the Trustee's exercising a put option to the extent appropriate to make such reimbursement.

(iv)    The Committee may direct the Trustee to cause a special valuation of the Company

Securities to be made as of the date of the sale of Company Securities to the Company, or it may cause benefits to be distributed based on the value of a Participant's Account as of the Valuation Date next succeeding the Participant's Severance Date or, if later, the date for which payment is requested.

(v)     The Committee may direct the Trustee to exercise a put option and cause the fair market value of such Company Securities to be paid pursuant to any other arrangement to the extent permitted by applicable law, rulings and regulations.

(b)     In the event the Company is under a legal disability which prevents it from paying for such Company Securities in cash within thirty (30) days of written notice of the exercise of the Trustee's put option, or such longer period of time prescribed by the Committee, the Committee may direct the Trustee to distribute such Company Securities in kind, provided that any distributions of Company Securities shall be subject to the provisions of Sections 7.1, 7.2, and 7.3. If the Trustee does not distribute such Company Securities in kind, the Trustee shall have a continuing put option with respect to such Company Securities. The Trustee shall distribute Company Securities in kind upon termination of the Plan pursuant to Section 11.3.

(c)     The Committee may direct the Trustee to distribute Company Securities in kind to Participants or beneficiaries in any other circumstances permitted by law and not specifically described herein.

(d)     In the event that Company Securities are distributed to a Participant, beneficiary, or a successor in interest (the "Distributee"), while the Company is an S-corporation, the Company shall have a mandatory call to purchase the Company Securities immediately upon the distribution date.

-53-

(i)    Such purchase shall be affected in a manner administratively convenient to the Plan and the Company, and may include the closing of such purchase pursuant to stock powers and similar documentation without the necessity for the physical transfer of certificates, all in accordance with rules and procedures prescribed by the Plan Administrator.

(ii)    Effective April 26, 2000, such purchase shall be affected as follows: (A) if the Company Securities were distributed as part of a total distribution (that is, a distribution within one taxable year of the balance to the credit the Participant's Accounts), then payment will be made with a promissory note which provides for substantially equal annual installments commencing within 30 days from the distribution date and extending over a period not exceeding 4 years, with interest payable at a reasonable rate (as determined by the Company) on any unpaid installment balance, with adequate security provided, and without penalty for any prepayment of such installments; or (B) if the Company Securities were distributed as part of a distribution that is less than a total distribution, then payment will be made in a lump sum no later than 30 days after the distribution date.

(iii)    The purchase price for such Company Securities shall, be the fair market value of such Company Securities, which shall be presumed to be the value determined as of the immediate preceding Valuation Date.

(iv)    Notwithstanding the provisions of Section 7.5(a), any distribution of Company Securities described in this subsection shall be subject to

the right of a Participant or spouse to receive a distribution in the form of an annuity, if and when available, pursuant to Sections 7.1, 7.2, or 7.3.

(v)    In addition to its right to purchase Company Securities pursuant to this subsection, the Company may direct the Trustee to exercise the Company's purchase rights on behalf of the Plan by giving thirty (30) days' written notice thereof to the Trustee, and in such event the Trustee shall purchase the Company Securities from the Distributee in the manner described above if the Trustee reasonably determines that it will have sufficient cash to purchase such Company Securities.

(e)    In addition to the foregoing, in the event Company Securities have been distributed to a Qualified Holder pursuant to subsection (b) or (c) above at any time the Company is not an S-corporation, a Qualified Holder shall have a "put option" under the same terms and conditions regarding exercise and purchase applicable to the Trustee described in subsection (a) for a period of fifteen (15) months, which period shall begin on the date on which the Company Securities are distributed by the Trustee (increased by any period of time commencing with the first day of such fifteen (15) month period during which the Company is prohibited from honoring the sale by applicable Federal or state law). The term "Qualified Holder" shall mean the Participant or his beneficiary receiving the distribution of such Company Securities and any other party to whom such Company Securities are transferred by gift or by reason of death. This provision shall not be amended or terminated with respect to any period in which this provision is required by applicable law and regulations; for any period with respect to which this provision is not required by applicable law and regulations, the Committee shall administer put option rights, if any, in accordance with

Section 9.2 and any otherwise applicable laws and regulations.

**7.17    Distributed Company Securities - Right of First Refusal**

(a)    Company Securities distributed to a Participant, beneficiary, or a successor in interest (the "Distributee") by the Trust prior to termination of the Plan pursuant to Section 11.3 shall be subject to a "right of first refusal" upon the terms and conditions set forth herein. The "right of first refusal" shall provide that prior to any transfer (as determined by the Committee) of Company Securities, the Distributee must first offer to sell such shares to the Trust and if the Trust refuses to exercise its right to purchase the shares, then the Company shall have a "right of first refusal" to purchase such shares. Neither the Trust nor the Company shall be required to exercise the right of first refusal. The right of first refusal shall not apply after termination of the Plan pursuant to Section 11.3.

(b)    Except as provided in subsection (c), the terms and conditions of the "right to first refusal" shall be as follows:

(i)    If the Distributee receives a bona fide offer for the purchase of all or any part of his Company Securities from a third party, the Distributee shall forthwith deliver (by registered mail, return receipt requested) a copy of any such offer to the Committee, which the Committee shall promptly transmit to the Trustee and the Company. The Trustee (at the direction of the Committee) or the Company, as the case may be, shall then have thirty (30) days, after receipt by the Committee of the written offer, to exercise the right to purchase all or any portion of the Company Securities. The purchase price to be paid by the Trust or the Company for the

-56-

shares shall be the purchase price stated in the bona fide offer received by the Distributee.

(ii)    If the Distributee proposes to sell any part of all of his Company Securities on a national exchange, the purchase price under the "right of first refusal" shall be the fair market value of such shares of Company Securities on such national exchange.

(c)    Notwithstanding anything contained herein to the contrary, if Company Securities are acquired by the Trust with the proceeds of a Qualified Loan, then dispositions of such Company Securities by a Distributee prior to termination of the Plan pursuant to Section 11.3 shall be subject to a "right of first refusal" under the following additional terms and conditions:

(i)    The "right of first refusal" cannot be exercised if the Company Securities are publicly traded.

(ii)    The selling price and other terms under the right are not less favorable to the Distributee than the greater of the fair market value of the Company Securities determined as set forth in Section 5.13 or the purchase price and other terms offered by a buyer other than the Company or the Trust making a good faith offer to purchase the Company Securities.

(iii)    The "right of first refusal" lapses fourteen (14) days after the initial Distributee gives written notice to the Committee (which the Committee shall promptly transmit to the Trustee and the Company) that an offer by a third party to purchase the Company Securities has been received.

**7.18   Other Rights**

Except as provided herein, no Company Securities acquired with the proceeds of a Qualified Loan maybe subject to a put, call or other option, or buy-sell or similar arrangement while held by or distributed from the Trust.

**7.19   Direct Rollovers of Certain Benefits**

The following provisions shall apply to the distribution of certain benefits under the Plan.

(a)   Notwithstanding any provision of the Plan that would otherwise limit a distributee's election under this Section, a distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have the entire amount of an eligible rollover distribution that is $200 or greater paid directly to an eligible retirement plan specified by the distributee in a direct rollover. In addition, if the amount of the eligible rollover distribution is greater than $500, the distributee may elect to have a portion of such total amount paid directly to an eligible retirement plan with the balance paid to the distributee, provided that the portion transferred to the eligible retirement plan is an amount not less than $500.

(b)   The following definitions shall apply to this Section.

(i)   Eligible rollover distribution: An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, including the proceeds resulting from the repurchase of Company Securities distributed at any time the Company is an S-corporation pursuant to Section 7.16(d), except that an eligible rollover distribution does not include: any distribution that is one of a series of

substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the distributee, or the joint lives (or joint life expectancies) of the distributee and the distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under section 401(a)(9) of the Code; and the portion of any distribution that is not includable in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(ii)   Eligible retirement plan: An eligible retirement plan is an individual retirement account described in section 408(a) of the Code, an individual retirement annuity described in section 408(b) of the Code, an annuity plan described in section 403(a) of the Code, or a qualified trust described in section 401(a) of the Code, that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(iii)   Distributee: A distributee includes an employee or former employee. In addition, the employee's or former employee's surviving spouse and the employee's or former employee's spouse or former spouse who is the alternate payee under a qualified domestic relations order, as defined in section 414(p) of the Code, are distributees with regard to the interest of the spouse or former spouse.

-59-

    (iv)    Direct rollover: A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

**7.20    Diversifying Distributions**

    (a)    <u>General</u>.  Participants who satisfy the conditions set forth below may elect a distribution (hereinafter referred to as "Diversifying Distribution") for the purpose of diversifying a portion of their Company Securities Account into investments other than Company Securities, which assets will thereafter be held in the AMSTED Industries Employees' Capital Accumulation Plan or such other comparable plan established or maintained by the Company ("CAP").

    (b)    <u>Eligibility</u>.

        (i)    A Participant who has attained age 55 and whose Account is 100% nonforfeitable may elect a Diversifying Distribution of up to 25% of the Company Securities that have been allocated to his Account.

        (ii)    A Participant who has attained age 60 and whose Account is 100% nonforfeitable may elect a Diversifying Distribution of up to 50% of the Company Securities that have been allocated to his Account.

For purposes of this subsection (b), the Participant's years of Vesting Service and attained age shall be determined as of the last day of the calendar quarter in which the election is made.

    (c)    <u>Election</u>.  In order to elect a Diversifying Distribution, a Participant described in subsection (b) must submit his election on a form prescribed by or acceptable to the Plan Administrator.

(i) The Diversifying Distribution election shall constitute the Participant's irrevocable advance agreement to a distribution of a portion of his Company Securities Account to the Participant subject to and conditioned upon the Participant's: (A) immediate sale of such shares to the Company, and (B) immediate rollover of the proceeds of such sale to the CAP. An effective election shall require all annuity rights, spousal consents, and any other requirement of law to be satisfied before such distribution is implemented. The Plan Administrator shall be authorized to implement the transactions contemplated herein as agent of the electing Participant in any manner convenient to the Plan Administrator, and shall be authorized to effect the closing of such transactions pursuant to stock powers and similar documentation without the necessity for the physical transfer of certificates.

(ii) The election form must be filed either in person with the Plan Administrator or his authorized delegate, or by first class mail to the Plan Administrator, at any time throughout each calendar quarter. The election form will be effective as of the first day of the calendar quarter in which the election form is received. In addition, an election form submitted by first class mail (A) must be contained in an envelope or other appropriate wrapper, properly addressed to the Plan Administrator at the address set forth in Section 11.8(e), deposited with the domestic mail service of the United States Post Office with sufficient first class postage prepaid, and (B) must be received by the Plan Administrator not later than the last business

-61-

day of the calendar quarter in which the election is to be given effect. An election form submitted by first class mail shall be deemed to be filed on the date of the postmark stamped by the United States Post Office on the cover in which such document was mailed, even though the form is received after the last day of a calendar quarter. Notwithstanding any other provision to the contrary, envelopes sent by first class mail which are actually received by the Plan Administrator on or after the tenth business day of the calendar quarter following the calendar quarter in which the election was intended to be given effect shall be deemed not filed timely and shall constitute an effective election for the following calendar quarter instead.

(d)     Assets Subject to Election.

(i)     A Participant described in subsection (b)(i) whose election is filed in accordance with subsection (c) may direct the investment of up to 25% of the total number of shares of Company Securities that shall have been allocated to his Account through the last day of the Plan Year prior to the Plan Year in which his election is filed (including any shares that have previously been distributed pursuant to a Diversifying Distribution described herein), less the number of such shares that have previously been directed pursuant to Section 7.20(d)(i) or (ii), all such shares being adjusted as reasonably determined by the Plan Administrator, for any stock split, stock dividend, or similar transaction.

  (ii)  A Participant described in subsection (b)(ii) whose election is filed in accordance with subsection (c) may direct the investment of up to 50% of the total number of shares of Company Securities that shall have been allocated to his Account through the last day of the Plan Year prior to the Plan Year in which his, election is filed (including any shares that have previously been distributed pursuant to a Diversifying Distribution described herein), less the number of such shares that have previously been directed pursuant to Section 7.20(d)(i) or (ii), all such shares being adjusted as reasonably determined by the Plan Administrator, for any stock split, stock dividend, or similar transaction.

  The number of shares described in (i) or (ii) above shall be based on decimal fractions of shares in accordance with the Plan Administrator's rules and procedures. The value of the shares made subject to an election described in this Section shall be the number of shares determined in (i) or (ii) above multiplied by the valuation applicable as of the date of distribution.

(e)  <u>De Minimis Rule</u>. Notwithstanding any other provision, no Participant may elect a Diversifying Distribution unless the election for a particular year applies to shares of Company Securities with a value of at least $500 as determined as of the preceding Valuation Date.

(f)  <u>Permanency of Elections</u>. Any election submitted in accordance with this Section and implemented by the Plan Administrator shall be permanent with respect to the shares of Company Securities subject to such election. Participants electing a Diversifying Distribution (and their successors in interest) shall have no right to repurchase the Company Securities sold to the Company pursuant to their election.

In the event of the death or incapacity of an electing Participant subsequent to his proper election hereunder, such election shall be binding on all other parties and successors in interest.

(g) Subsequent Investments. The investment and administration of assets subject to a Diversifying Distribution after the rollover described in (c)(i) shall be held, maintained and governed exclusively by the CAP and shall be independent of this Plan.

(h) Stock Rights. All rights, including put options, rights of first refusal, dividends, voting, and other rights shall cease with respect to any Company Securities when tendered pursuant to a Diversifying Distribution.

(i) No Default. Notwithstanding any other provision, no Diversifying Distribution may be elected if the Company is in default, or because of the proposed Diversifying Distributions or purchase of Company Securities will be in default, under any loan agreement note, or other obligation of the Company.

# ARTICLE 8

## Top-Heavy Plan Requirements

### 8.1    Definition of Top-Heavy Plan

The Plan shall be Top-Heavy with respect to a Plan Year if it is a member of a Required Aggregation Group and the present value of the accrued benefits for Key Employees under all Plans in the Aggregation Group exceeds 60% of the present value of the accrued benefits for all employees under all Plans in the Aggregation Group. This ratio and, in the case of a defined benefit plan, the amount of the underlying accrued benefit, shall be computed as provided in Section 416(g) of the Code. Such present values shall be determined as of the last day of the preceding Plan Year of each Plan. If all Plans in the Aggregation Group do not have the same Plan Year, then such present values shall be determined as of the last day of each Plan Year ending in the same calendar year as the last day of the preceding Plan Year of this Plan. In the case of the plan's initial Plan Year, the aggregate value of the accounts shall be determined as of the last day of said initial Plan Year. Under a defined contribution plan, such present values shall be determined by aggregating the value of all accounts of all Key Employees and all employees respectively. As used in this Section, the terms "accounts" and "present value of accrued benefits" shall include Employer contributions payable to the Plan, employee contributions, rollover accounts, and certain prior distributions during the five-year period ending on the determination date (including distributions from terminated plans which if they had not been terminated would have been members of the Required Aggregation Group), if any, all in accordance with Section 416(g) of the Code or regulations thereunder; provided that if any individual has not performed services for the Employer at any time during the five-year period ending on the determination date, any account or accrued benefit attributable to such individual shall not be taken into account.

For the purpose of determining such present value under a defined benefit plan:

(a)    The determination shall be made as of the most recent annual Plan Valuation Date used to compute Plan costs for purposes of compliance with the minimum funding standards of the Code.

(b)    An interest assumption of 5% and the UP-1984 mortality table shall be used. No assumptions with respect to future withdrawal or compensation increases shall be used. Except to the extent a plan provides a non-proportional subsidy, the present value of accrued benefits shall be determined on the assumption that each Participant's benefit will commence on the later of his Normal Retirement Date or the date of the determination. The value of ancillary benefits not related to retirement benefits, such as pre-retirement death and disability benefits and post-retirement medical benefits, shall not be taken into account. The value of subsidized early retirement benefits and benefit options shall not be taken into account unless such subsidies are non-proportional. Any benefit which includes a non-proportional subsidy shall be deemed to commence as of the Participant's age at which such benefit has the highest value. A subsidy shall be considered non-proportional unless the group of Participants who may receive the subsidy would independently satisfy the coverage requirements of the Code. The present value of accrued benefits shall include previous benefit payments or distributions of annuity contracts only to the extent required by Section 416 of the Code.

## 8.2    Top-Heavy Plan Requirements

Notwithstanding any provision of the Plan to the contrary but subject to the Company's right to terminate the Plan, the following provisions shall apply with respect to any Plan Year in which the Plan is Top-Heavy.

(a)    <u>Minimum Vesting</u>. Effective as of the first day of such Plan Year, the following vesting schedule shall be substituted for that set forth in Section 6.6:

-66-

| If the Participant's Years of Service Are: | The Nonforfeitable Percentage of His Account Shall Be: |
|---|---|
| 2 but less than 3 years | 20% |
| 3 but less than 4 years | 40% |
| 4 but less than 5 years | 60% |
| 5 but less than 6 years | 80% |
| 6 or more years | 100% |

(b)      <u>Minimum Contribution</u>. This subsection (b) shall apply only to a Participant who is a Non-Key Employee and who in 'a Plan Year with respect to which this subsection would otherwise apply has not had his accounts in all defined contribution plans which are members of the Aggregation Group credited with Employer contributions and forfeitures equal in the aggregate to 7-1/2 or more percent of his Total Compensation for such Plan Year. His Employer shall make a supplemental contribution to the Account of any such Participant, in an amount sufficient for the total amount of Employer contributions allocated to the accounts of such Participant to equal 7-1/2% of such Participant's Total Compensation for such Plan Year. For purposes of this subsection, the term "Participant" means a Participant who completes a full Year of Service in a Plan Year in which the Plan is Top-Heavy.

(c)      <u>Code Section 415(e) Limitation</u>. In the case of any Participant hereunder who at any time participated in a defined benefit plan of the Company or an Affiliate, "1.0" shall be substituted for "1.25" wherever it occurs in Sections 5.9(g) and 5.9(h) if the ratio computed pursuant to Section 8.1 is greater than 90%. The limitation contained in this subsection 8.2(c) shall not apply for Plan Years beginning after December 31, 1999.

-67-

**8.3    Definitions for Purposes of this Article**

    (a)    A "Key Employee" is any current or former employee described in Section 416(i)(1) of the Code or his beneficiary. The compensation used in determining whether any such employee is a Key Employee shall be based on such employee's Total Compensation from all Employers (including all Affiliates) for the applicable Plan Year.

    (b)    A "Non-Key Employee" is an employee of the Employer other than a Key Employee.

    (c)    "Employer" means all Employers and Affiliates.

    (d)    "Aggregation Group" means a group of qualified plans consisting of this Plan and certain other defined contribution plans and defined benefit plans maintained by the Employer which are aggregated for purposes of determining whether the group as a whole is Top-Heavy. The Aggregation Group includes plans which must be aggregated for this purpose (the "Required Aggregation Group") and other plans which are aggregated for this purpose (the "Permissive Aggregation Group").

    (e)    The "Required Aggregation Group" shall include:

        (i)    each employee benefit plan of the Employer qualified under Section 401(a) of the Code in which a Key Employee is a participant; and

        (ii)    each other qualified plan which enables any plan described in (i) to meet the anti-discrimination or coverage requirements of the Code.

    (f)    The "Permissive Aggregation Group" includes such other qualified plan or plans of the Employer as the Committee may in its discretion elect, provided the inclusion of any such plan in the Aggregation Group does not cause it to fail

to meet the antidiscrimination or coverage requirements of the Code.

## 8.4 Cessation of Top-Heavy Requirements

(a) Once the Plan has been Top-Heavy but is no longer Top-Heavy, this Article shall be inapplicable except as provided in this Section.

(b) The vesting schedule set forth in Section 8.2(a) shall continue to apply to a Participant who had 3 or more Years of Service as of the last day on which the Plan was Top-Heavy.

(c) The Account of any other Participant constituted as of the last day on which the Plan was Top-Heavy shall be separately accounted for as a subaccount until the nonforfeitable percentages of his Account pursuant to Section 6.6 equals or exceeds the nonforfeitable percentage of his Account on the last day on which the Plan was Top-Heavy. In the event such Participant shall resign, be released or discharged from the employ of all Employers and Affiliates while a subaccount is being maintained, his nonforfeitable interest in such subaccount shall be computed pursuant to Section 6.6 but using the same nonforfeitable percentage as was applicable to him on the last day on which the Plan was Top-Heavy.

## ARTICLE 9

## Powers and Duties of Plan Committee

**9.1     Plan Committee**

(a)     The Company, acting through its Board of Directors, shall maintain an employee stock ownership plan committee of the Board of Directors of the Company (the "ESOP Committee" or "Committee") to serve as named fiduciary of the Plan and to administer the Plan and Trust. The Committee shall consist of no less than four directors of the Company. At least half of the members of the Committee as constituted from time to time shall be independent outside directors of the Company. In discharging all its powers, standards and responsibilities hereunder, the Committee shall act in accordance with the standards set forth in Section 5.2 of the Trust.

(b)     A person shall be considered an independent outside director only if neither he nor a member of his family is employed or was employed during the preceding two years by the Company or an Affiliate and neither he nor a member of his family has a "pecuniary interest" in the Company or an Affiliate. An individual has a "pecuniary interest" in the Company or an Affiliate if (i) he is or is employed by or owns more than a de minimis interest in a supplier of goods or services to the Company or a customer of the Company or an Affiliate, unless such goods or services represent a de minimis portion of the supplier's overall activity, or the goods purchased from the Company represent a de minimis portion of the customer's overall activity, (ii) the individual's personal business activity has more than a de minimis connection with the Company or an Affiliate, or, (iii) he is counsel to or an investment banker for the Company or an Affiliate. The Board of Directors of the Company shall determine whether an individual is an independent outside director.

(c)     Subject to subsections (a) and (b) above, the Board of
        Directors of the Company shall have authority to appoint as
        members of the Committee such directors of the Company
        as it deems advisable. Such authority to appoint shall
        include initial appointments and appointments with respect
        to future vacancies. The Board of Directors shall have the
        further authority to remove any member of the Committee,
        with or without cause. Each member of the Committee
        shall immediately advise the Board of Directors of the
        Company in writing of any facts or circumstances that may
        affect the status as an independent outside director of any
        member of the Committee, including himself.

(d)     The Secretary of the Company shall certify to the Trustee
        the names of the members of the Committee.

(e)     In the absence of a Plan Administrator designated in writing
        by the Committee, the Committee shall also serve as Plan
        Administrator for the Plan. The Trustee may rely on the
        written statement of the Secretary of the Committee, or
        other person authorized by the Committee, when the
        Secretary or such other person notifies the Trustee of any
        decision or direction of the Committee. The Committee
        shall furnish the Trustee with the name and specimen
        signature of the Secretary of the Committee and of any
        other person upon whose statement of the decision and
        direction of the Committee the Trustee is authorized to rely.

(f)     Usual and reasonable expenses of the Committee may be
        paid in whole or in part by the Company, and any such
        expenses incurred in the course of administering the Plan
        not paid by the Company shall be paid by the Trustee out of
        the principal or income of the Trust Fund. The members of
        the Committee who are employees of the Company or an
        Affiliate shall not receive any compensation for their
        services as such.

-71-

## 9.2    Powers and Duties of Committee

The Committee shall have final and binding discretionary authority to control and manage the operation and administration of the Plan, including all rights and powers necessary or convenient to the carrying out of its functions hereunder, whether or not such rights and powers are specifically enumerated herein. The Committee may, in its discretion, delegate authority with regard to its responsibilities in administering the Plan to any individual, officer or committee in accordance with (h) below. References to the Company's authority, right or power to act which are contained in any notice, disclosure or communication made with a view toward effectuating the purposes of the Plan shall be construed to include authority for such actions by the Committee on the Company's behalf and actions by others to whom the Committee has delegated its authority. Notwithstanding any other provision of the Plan, in the event that an action or direction of any person to whom authority under the Plan has been delegated conflicts with an action or direction of the Committee, then the authority of the Committee shall supersede that of the delegate with respect to such action or direction.

Without limiting the generality of the foregoing, and in addition to other powers set forth in this Article 9, the Committee shall have the following discretionary authorities:

(a)    To select and remove, as it determines to be appropriate, trustees and insurance carriers, and to authorize reasonable compensation for such trustees and carriers.

(b)    To construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder, all in the sole discretion of such decision maker.

(c)    To prescribe procedures to be followed by Participants or beneficiaries in filing applications for benefits, and to authorize payment of such benefits.

(d)    To prepare and distribute, in such manner as the Committee determines to be appropriate, information explaining the Plan.

(e)     To receive from the Company and from Participants and beneficiaries, such information, and to maintain records concerning such information, as shall be necessary for the proper administration of the Plan, and to receive reports from the Compensation and Benefits Committee of the Board of Directors.

(f)     To furnish the Company upon request such annual and other reports with respect to the administration of the Plan as are reasonable and appropriate.

(g)     To receive, review and maintain on file reports of the financial condition and of the receipts and disbursements of the Trust Fund from the Trustee.

(h)     To delegate to the Plan Administrator or to any other agent of the Company authority to issue directions to make distributions to participants and beneficiaries or to cease making such distributions, to review and decide claims for benefits pursuant to Section 11.8, including any interpretations of the Plan or Trust, which decisions and interpretations said Plan Administrator shall have full discretion and authority to make hereunder, and to take other routine administrative actions not involving the voting of Company Securities, the exercise of any other shareholder rights, or any other non-delegable powers, duties, or responsibilities of the Company; provided that, in the case of each such delegation of authority, the Committee shall advise the Trustee of any restrictions on such authority, including, if applicable, a requirement that two or more authorized individuals must have joined in executing the memorandum which reflects the substance of such direction. In accordance with the foregoing provisions, the Trustee shall be furnished with the name and specimen signature of any person authorized to issue such directions. The Trustee is hereby authorized to accept and execute any such direction from a source other than the Committee as if it were issued by the Committee.

### 9.3 Committee Procedures

The Board of Directors of the Company shall appoint one Committee member as chairman which member shall be an independent outside director. The Committee shall appoint a Secretary, who may or may not be a Committee member. Appointment of the Secretary of the Committee shall be communicated to the Trustee in writing. The Secretary shall keep a record of all actions of the Committee and shall forward or cause to be forwarded all necessary communications to the Company or the Trustee.

The Committee may adopt such bylaws and regulations as it deems desirable for the conduct of its affairs.

A majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business. Meetings of the Committee may be held by telephone conference, provided that a majority of the members of the Committee at the time in office shall constitute a quorum for the transaction of business in such telephone conference. All resolutions or other actions taken by the Committee at any meeting shall be by the vote of the majority of the members of the Committee present at the meeting. The Committee may act without a meeting by unanimous written consent of its members.

Filing or delivery of any document with or to the Secretary of the Committee or the Plan Administrator in person or by registered or certified mail, addressed in care of the Company, shall be deemed a filing with or delivery to the Committee.

### 9.4 Consultation with Advisors

The Committee (or any fiduciary designated by the Committee pursuant to Section 9.7) may employ one or more persons to render advice with regard to any responsibility it may have under the Plan. The Committee may consult with counsel, actuaries, accountants, physicians or other advisors (who may be counsel, actuaries, accountants, physicians or other advisors for the Company) and may also from time to time utilize the services of employees and agents of the Company in the discharge of its responsibilities.

## 9.5 Records and Reports

The Committee shall take all such action as it deems necessary or appropriate to comply with governmental laws and regulations relating to the maintenance of records, notifications to Participants, filings with the Internal Revenue Service, and U.S. Department of Labor, and all other requirements applicable to the Plan.

## 9.6 Investment of Trust Assets

Consistent with the purposes of this Plan, the Committee may direct the Trustee to hold, invest or reinvest all or any part of the Fund which is not invested in Company Securities in Qualified Investments. "Qualified Investments" means investments in United States Government Obligations, in high-grade corporate commercial paper, in interest bearing accounts including but not limited to certificates of deposit, time deposits, saving accounts and money market accounts in any bank (as defined by the Illinois Banking Act, 205 ILCS 5/2), including the Trustee's banking department, which certificates and deposits are insured by the Federal Deposit Insurance Corporation or other similar federal agency, in obligations issued or guaranteed by any agency or instrumentality of the United States of America or in short-term discount obligations of the Federal National Mortgage Association.

## 9.7 Obligations of Committee

The Committee is hereby authorized to act solely upon the basis of such notifications from the Company and to rely upon any document or signature believed by them to be genuine and shall be fully protected in so doing. For the purpose of this Section, a letter or other written instrument signed in the name of the Company by any officer thereof shall constitute a notification by the Company; provided, however, that any action by the Board of Directors with respect to the appointment or removal of a member of the Committee or by the Committee with respect to the amendment of the Plan and Trust or the designation of a group of employees to which the Plan is applicable shall be evidenced by an instrument in writing, signed by a duly authorized officer or officers, certifying that said action has been authorized and directed by a resolution of the Board of Directors of the Company or by the Committee.

Except as provided in Section 3.1, the Committee shall be under no obligation to enforce payment of contributions hereunder or to determine whether contributions delivered to the Trustee comply with the provisions hereof relating to contributions, and is obligated only to administer this Plan pursuant to the terms hereof.

The Committee or where appropriate the Plan Administrator shall make such determinations as are necessary to accomplish the purposes of the Plan with respect to individual Participants or classes of such Participants. The Company shall be responsible for notifying the Committee of facts relevant to such determinations, including without limitation length of service, compensation for services, dates of death, permanent disability, granting or terminating of leaves of absence, ages, retirement and termination of service for any reason (but indicating such reason), and termination of participation. The Company shall be responsible for notifying, the Committee of all facts which may be necessary for the Committee to discharge its responsibilities hereunder.

## ARTICLE 10

### Trustee and Trust Fund

**10.1 Trust Fund**

A Trust Fund to be known as the AMSTED Industries Incorporated Employees' Stock Ownership Trust (herein referred to as the "Trust" or "Trust Fund") has been established by the execution of a trust agreement with a Trustee and is maintained for the purposes of this Plan. The assets of the Trust will be held, invested and disposed of by the Trustee, in accordance with the terms of the Trust, for the benefit of the Participants and their beneficiaries.

**10.2 Payments to Trust Fund and Expenses**

All contributions hereunder will be paid into and credited to the Trust Fund and all benefits hereunder and expenses chargeable thereto not paid directly by the Company will be paid from the Trust Fund and charged thereto, except that the Trustee's fees, expenses, taxes and charges shall be paid as provided in Section 4.3 of the Trust.

**10.3 Trustee's Responsibilities and Committee's Directions**

The powers, duties and responsibilities of the Trustee shall be as set forth in the Trust Agreement, and nothing contained in this Plan, either expressly or by implication, shall impose any additional powers, duties or responsibilities upon the Trustee. To the extent permitted by law and anything herein to the contrary notwithstanding, the Committee shall be authorized to treat the Trustee as a directed trustee, and the Trustee shall, from time to time, and upon such terms and conditions as directed by the Committee, act with respect to the administration and assets of the Plan and Trust as directed by the Committee. Subject to applicable law and any express provisions in the Plan or Trust to the contrary, the Trustee's duties and responsibilities with respect to the administration and assets of the Plan and Trust, other than the valuation of Company Securities and other Plan assets, shall be limited to effecting the directions of the Committee, all discretionary, fiduciary responsibility with respect to such matters being hereby allocated to the Committee. The Committee's directions

described herein may be special or standing instructions and may be transmitted in any reasonable manner by any person duly authorized by the Committee. In the case of distributions of benefits from the Plan, the directions to the Trustee shall include sufficient detail to enable the Trustee to implement the directions promptly. Prior to acting upon any directions of the Committee, the Trustee's responsibilities shall be limited to reasonable steps to satisfy itself that such directions were proper in form and duly authorized by the Committee. The Trustee shall rely conclusively on the Committee's proper directions and implement them in timely fashion.

## 10.4    Reversion to the Employers

The Employers have no beneficial interest in the Trust Fund and no part of the Trust Fund shall ever revert or be repaid to an Employer, directly or indirectly, except as provided in Section 5.9(d) and except that an Employer shall upon written request have a right to recover

(a)    within one year of the date of payment of a contribution by an Employer, an amount (less any losses attributable thereto) contributed through a mistake of fact, and

(b)    any contributions (less any losses attributable thereto) to the extent that their deduction under Section 404 of the Code is disallowed, provided that such contributions to which disallowed deductions are attributable are returned to the Employers within one year after disallowance of the deduction.

Notwithstanding any other provision to the contrary, all contributions by the Employers are hereby deemed conditioned upon the above described deductibility of said contributions.

## 10.5    Voting of Company Securities and Other Related Rights

(a)    With respect to Company Securities allocated to Participants' Accounts, the Committee shall submit the voting of such shares and the exercise of other shareholder

rights to the Participants (including but not limited to the right to sell or retain such shares in extraordinary circumstances involving an unusual price or terms and conditions for Company Securities such as a tender offer) to the extent required by Code Section 409(e). Participants and beneficiaries shall be entitled to direct the Trustee as to the manner in which voting rights under Company Securities which are allocated to their Accounts are to be exercised with respect to any corporate matter which involves the voting of such shares with respect to the approval or disapproval of any corporate merger or consolidation, recapitalization, reclassification, liquidation, dissolution, sale of substantially all assets of a trade or business, or such similar transaction as may be prescribed in regulations. To the extent not required by Code Section 409(e) as described in the preceding sentence, the Company may elect to submit the voting of allocated Company Securities to Participants, and in such event, Participants and beneficiaries shall be entitled to direct the Trustee as provided herein; and in any case not required by Code Section 409(e) the Company may elect not to submit the voting of allocated Company Securities to Participants, and in such event, the Trustee shall follow the Committee's directions. The Committee or any service provider selected by the Committee shall deliver, receive and tabulate all the materials with regard to the submission of any matter to the Participants. The Committee shall advise the Trustee and the Trustee shall vote such shares and exercise such rights with respect to Company Securities allocated to Participants' Accounts in accordance with the Committee's instructions based on the directions of those Participants who direct the voting of such shares or exercising such rights. With respect to Company Securities allocated to Participants' Accounts for which the Committee has not received instructions from the Participant, the Committee shall so advise the Trustee and the Trustee shall vote such shares and exercise such rights in the same proportions (affirmatively, negatively or abstain) as the number of

shares subject to the directions of those Participants who have directed the voting of shares or the exercise of rights, but only if and to the extent not prohibited under Treasury Regulations or other applicable laws, rulings or regulations. Those Participants who direct the voting of their shares shall be named fiduciaries, as that term is defined under ERISA, with respect to those shares voted by the Trustee for which no directions for voting were provided. The Trustee may rely conclusively on instructions of the Committee with respect to the manner of voting or exercising other shareholder rights with respect to Company Securities allocated to Participants' Accounts, except where the Trustee reasonably determines that the direction of the Participant resulted from duress, coercion, or fraud, or if there was a breach of Participants' confidentiality by the Company or the Committee.

(b)     With respect to Company Securities not allocated to Participants' Accounts, the Trustee shall act in a timely manner as follows:

    (i)     the Trustee shall vote or exercise other shareholder rights with respect to Company Securities not allocated to Participants' Accounts in accordance with any directions that the Committee, in its sole discretion, may issue; and

    (ii)    in the event no directions are received from the Committee, the Trustee shall vote or exercise other shareholder rights in the same proportions (affirmatively, negatively or abstain) as the number of shares subject to directions of those Participants who have directed the voting of shares or the exercise of other shareholder rights, but only if and to the extent not inconsistent with Treasury Regulations or other applicable laws, rulings or regulations. The Committee shall advise

the Trustee of the names of the members of
the Committee concurring in the Committee's
directions regarding voting or other exercise
of shareholder rights with regard to Company
Securities not allocated to Participants'
Accounts. Participants who provide
directions for voting their shares shall be
named fiduciaries, as that term is defined
under ERISA, with respect to those shares
voted by the Trustee for which no directions
for voting were provided. The Committee's
duties, powers, and responsibilities under this
Section 10.5(b) shall not be delegated.

## ARTICLE 11

### Amendment or Termination

#### 11.1 Amendment to Conform with Law

The Company, through the Committee (to which the Company has delegated its authority), may by amendment make such changes in, additions to, and substitutions for the provisions of the Plan and Trust, to take effect retroactively or otherwise, as the Committee may deem necessary or advisable for the purpose of conforming the Plan and Trust to any applicable provisions of the Code or to any other present or future Federal or State law relating to plans or trusts of this or similar nature, or to the regulations promulgated thereunder.

#### 11.2 Other Amendments

The Committee may also amend the Plan, without the Trustee's consent after the effective date of this amendment and restatement, and the Trust, with the Trustee's consent (which shall not be unreasonably withheld), at any time and from time to time in any manner which it deems desirable, including but not by way of limitation to change any provision relating to the allocation of contributions, distribution or payment, or both, of any assets of the Trust Fund. The Committee in considering any amendment of the Plan and Trust shall not delegate its power or responsibility to the Plan Administrator (if other than the Committee).

#### 11.3 Termination

The Board of Directors of the Company may at any time terminate the Plan and Trust; provided, however, that no termination shall occur, and there shall not be a permanent discontinuance of contributions to the Plan, unless:

(a) all liabilities of the Plan with respect to Participants and beneficiaries as of the date of such termination are satisfied;

(b) all outstanding debts and obligations of the Plan and Trust have been paid in full through Employer contributions, or

-82-

the Company has made provision satisfactory to the Trustee for the payment by the Company of all debts of the Plan and Trust;

(c)    to the extent Company Securities are allocated to the Account of a Participant, distributions made to such Participant and his beneficiaries for any reason on or after termination of the Plan are in the form of Company Securities;

(d)    the Company, at its own expense and not as an expense of the Trust, immediately upon termination of the Plan, effects such registration of the stock of the Company under the Securities Act of 1933, the Securities Exchange Act of 1934, state securities laws and any comparable laws as may be necessary to permit the distribution on termination of the Plan and to permit Participants and beneficiaries to sell such stock without restriction; and

(e)    all Company Securities held in the Trust are converted in accordance with the Restated Certificate of Incorporation of the Company.

Distributions on termination of the Trust will be made in accordance with Article 7 and Section 5.9(d) hereof.

### 11.4   Form of Amendment or Termination

Any amendment or termination of the Plan shall be made by an instrument in writing signed by the Chairman of the Committee, or by the Secretary of the Company in the event of a termination of the Plan, certifying that said amendment or termination has been authorized and directed by the Committee or the Board of Directors, as applicable.

**11.5    Limitations on Amendments**

The provisions of this Article are subject to the following restrictions:

(a)    Except as provided in Section 10.4, no amendment shall operate either directly or indirectly to give an Employer any interest whatsoever in any funds or property held by the Trustee under the terms hereof, or to permit corpus or income of the Trust to be used for or diverted to purposes other than the exclusive benefit of the Participants and their beneficiaries.

(b)    Except to the extent necessary to conform to the laws and regulations or to the extent permitted by any applicable law or regulation, no amendment shall operate either directly or indirectly to deprive any Participant of his nonforfeitable beneficial interest in his Account as it is constituted at the time of the amendment.

(c)    No amendment shall change any vesting schedule unless each Participant who has completed three or more Years of Service is permitted to elect, within such reasonable period after the adoption of such an amendment as the Company may designate, to have the nonforfeitable percentage of his Account computed under the Plan without regard to such amendment. Notwithstanding the foregoing, no election need be offered to a Participant whose nonforfeitable percentage of his Account cannot at any time be lower than such percentage determined without regard to such amendment.

(d)    Except as permitted by applicable law, no amendment shall eliminate or reduce an early retirement benefit or a retirement-type subsidy or eliminate an optional form of benefit.

**11.6    Level of Benefits Upon Merger**

This Plan shall not merge or consolidate with, or transfer assets or liabilities to, any other plan, unless each Participant shall be entitled to receive a benefit immediately after said merger, consolidation or transfer (if such other plan were then terminated) which shall be not less than the benefit he would have been entitled to receive immediately before said merger, consolidation or transfer (if this Plan were then terminated).

**11.7    Vesting Upon Termination; Liquidation of Trust**

(a)    This Plan shall be deemed terminated if and only if the Plan terminates by operation of law or pursuant to Section 11.3. In the event of any termination or partial termination within the meaning of the Code, the Account of each affected Participant who is employed by the Company or an Affiliate on the date of the occurrence of such event shall be nonforfeitable; provided, however, that in no event shall any Participant or beneficiary have recourse to other than the Trust Fund for the satisfaction of benefits hereunder.

(b)    In the event of a termination or in the event the Employers permanently discontinue the making of contributions to the Plan, the Committee, in accordance with the requirements of applicable law and any directions issued by the Company as Plan sponsor, shall determine the manner of implementing such action. However, if, after such termination or discontinuance the Committee shall determine it to be impracticable to continue the Trust any longer, the Committee may, in its discretion, declare a date to be the Determination Date for all Participants whose Determination Date has not yet occurred, and the Trustee shall thereupon, as promptly as shall then be reasonable under the circumstances, distribute to each Participant his Account in the Trust Fund and disburse all other Trust assets in accordance with the provisions of Article 7 and Section 5.9(d).

(c)     The liquidation of the Trust, if any, in connection with any Plan termination shall be accomplished by the Committee acting on behalf of the Employers. After directing that sufficient funds be set aside to provide for the payment of all expenses incurred in the administration of the Plan and the Trust, to the extent not paid or provided for by the Employers, the Committee shall, as promptly as shall then be reasonable under the circumstances, distribute to each Participant his Account in the Trust Fund and disburse all other Trust assets in accordance with the provisions of the Plan. Upon completion of such distributions, the Trust shall finally and completely terminate. In the event the Committee and the Company are no longer in existence, the actions to be taken by the Committee pursuant to this Section shall be taken by the Trustee.

## 11.8    AMSTED Claims Procedure

(a)     Any Participant (or beneficiary of a deceased Participant) who believes that he is entitled to receive a benefit under the Plan, including a benefit other than that initially determined by the Plan Administrator, may file a claim in writing with the Plan Administrator.

(b)     The Plan Administrator shall within 90 days after the receipt of a claim either allow or deny the claim in writing. A denial of a claim shall be written in a manner calculated to be understood by the claimant and shall include:

(i)      the specific reason or reasons for the denial;

(ii)     specific reference to pertinent Plan provisions on which the denial is based;

(iii)    a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(iv)    an explanation of the Plans claim review procedure.

(c)    A claimant whose claim is denied (or his duly authorized representative), may within 60 days after receipt of denial of his claim:

    (i)    request a review upon written request to the Plan Administrator;

    (ii)    review pertinent documents; and

    (iii)    submit issues and comments in writing.

(d)    The Plan Administrator shall notify the claimant of his decision on review within 60 days after receipt of a request for review. Notice of the decision on review shall be in writing and shall include specific reasons for the decision written in a manner calculated to be understood by the claimant and specific references to the pertinent Plan provisions on which the decision is based.

(e)    For purposes of this Section, communications to the Plan Administrator may be addressed as follows:

Plan Administrator
AMSTED Industries Incorporated
Employees' Stock Ownership Plan
44th Floor – Boulevard Towers South
205 North Michigan Avenue
Chicago, Illinois 60601

(f)    The 90-day and 60-day periods described in subsections (b) and (d) respectively may be extended at the discretion of the Plan Administrator for a second 90- or 60-day period as the case may be, provided that written notice of the extension is furnished to the claimant prior to the termination of the initial period, indicating the special circumstances requiring such extension of time and the date by which a final decision is expected. Any person submitting a claim in

accordance with this Section may with the consent of the Company (i) withdraw the claim at any time, or (ii) defer the 'date as of which such claim shall be deemed filed for purposes of this Section.

(g)    Participants and beneficiaries shall not be entitled to challenge the Plan Administrator's determinations in judicial or administrative proceedings without first complying with the procedures in this Article. The Plan Administrator's decisions made pursuant to this Section are intended to be final and binding on Participants, beneficiaries and others. If a Participant or beneficiary does elect to challenge the Plan Administrator's determination in judicial or administrative proceedings, the action must be filed within 120 days following the day the Plan Administrator makes a final determination on the claim.

# ARTICLE 12

## Adoption by Affiliates

### 12.1 Adoption of Plan

Any Affiliate may adopt this Plan for the benefit of its eligible employees if authorized to do so by the Company or the Committee. Such adoption shall be by resolution of such Affiliate's board of directors, a certified copy of which shall be filed with the Company, Committee and the Trustee. Upon such adoption, such Affiliate shall become an "Employer."

### 12.2 Agents for Employer

Each Employer which adopts this Plan pursuant to Section 12.1 hereby irrevocably gives and grants to the Company and to the Committee full and exclusive power conferred upon it by the terms of the Plan and to take or refrain from taking any and all action which such Employer might otherwise take or refrain from taking with respect to the Plan, including sole and exclusive power to exercise, enforce or waive any rights whatsoever which such Employer might otherwise have with respect to the Trust, and each such Employer, by adopting this Plan, irrevocably appoints the Company and the Committee its agents for such purposes. Neither the Trustee nor the Committee nor any other person shall have any obligation to account to any such Employer or to follow the instructions of or otherwise deal with any such Employer. Each such Employer shall contribute such amounts as are determined under Article 3.

### 12.3 Adoption of Amendments by Other Employers

Any Employer that is a subsidiary or an affiliate of the Company shall be deemed conclusively to have assented to any amendment to this Plan without the necessity of any affirmative action on the part of such Employer.

### 12.4    Termination

Any Employer which adopts this Plan pursuant to Section 12.1 may terminate this Plan with respect to its own employees by resolution of its board of directors, if authorized to do so by the Board of Directors of the Company and by the Committee.

### 12.5    Data to be Furnished by Employers

Each Employer which adopts this Plan pursuant to Section 12.1 shall furnish information and maintain such records with respect to its employee Participants as called for hereunder, and its determinations and notifications with respect thereto shall have the same force and effect as comparable determinations by the Company with respect to its employee Participants.

# ARTICLE 13

## Miscellaneous

### 13.1    No Guarantee of Employment, etc.

Neither the creation of the Plan nor anything contained in the Plan or Trust Agreement shall be construed as giving any Participant hereunder or other employee of any Employer any right to remain in the employ of an Employer, any equity or other interest in the assets, business or affairs of any Employer, or any right to complain about any action taken or any policy adopted or pursued by an Employer.

### 13.2    Rights of Participants and Others

(a)    No Participant shall have any right to sell, assign, pledge, hypothecate, anticipate or in any way create a lien upon any part of the Trust Fund.  To the maximum extent permitted by ERISA and the Code, no interest in the Trust Fund, or any part thereof, shall be assignable in or by operation of law, or be subject to liability in any way for the debts or defaults of Participants, their beneficiaries, spouses or heirs-at-law, whether to an Employer or to others.

(b)    Prior to the time that distributions are to be made hereunder, the Participants, their spouses, beneficiaries, heirs-at-law or legal representatives shall have no right to receive cash or other things of value from an Employer or the Trustee from or as a result of the Plan and Trust.

### 13.3    Qualified Domestic Relations Order

Notwithstanding anything in this Plan to the contrary, the Plan Administrator shall distribute a Participant's Account, or any portion thereof, in accordance with the terms of any domestic relations order entered on or after January 1, 1985, which the Plan Administrator determines to be a qualified domestic relations order described in Section 206(d)(3) of ERISA and Section 414(p) of the Code.  For qualified domestic relations orders approved by the Plan Administrator on or before

April 25, 2000, such distributions may be made as soon as the amount thereof is determined, irrespective of whether the Participant has then attained his "earliest retirement age" within the meaning of Section 206(d)(3)(E) of ERISA and Section 414(p)(4)(B) of the Code. For qualified domestic relations orders approved by the Plan Administrator on or after April 26, 2000, such distributions shall be made to the alternate payee at the time distributions would commence as prescribed by Section 7.5 of the Plan, as in effect after April 26, 2000, as if the alternate payee had then terminated employment with an Employer, irrespective of whether the Participant has then attained his "earliest retirement age" within the meaning of Section 206(d)(3)(E) of ERISA and Section 414(p)(4)(B). A former spouse of a deceased Participant shall not be treated as the Participant's surviving Spouse for purposes of entitlement to any survivorship benefits hereunder except as may be provided under the terms of a qualified domestic relations order.

## 13.4  Controlling Law

To the extent not preempted by the laws of the United States of America, the laws of the State of Illinois shall be controlling state law in all matters relating to the Plan.

## 13.5  Severability

If any provision of this Plan shall be held illegal, invalid or unenforceable for any reason, said illegality, invalidity or unenforceability shall not affect the remaining parts of this Plan, but this Plan shall be construed and enforced as if said illegal, invalid or unenforceable provision, but only to the extent illegal, invalid or unenforceable, had never been included herein.

## 13.6  Notification of Addresses

Each Participant and each beneficiary of a deceased Participant shall file with the Plan Administrator from time to time in writing his post office address and each change of post office address. Any communication, statement or notice addressed to the last post office address filed with the Plan Administrator, or if no such address was filed with the Plan Administrator, then to the last post office address of the Participant or

beneficiary as shown on his Employer's records, will be binding on the Participant and his beneficiary for all purposes of this Plan and neither the Plan Administrator nor any Employer shall be obliged to search for or ascertain the whereabouts of any Participant or beneficiary.

**13.7    Gender and Number**

Whenever the context requires or permits, the gender and number of words shall be interchangeable.

IN WITNESS WHEREOF this document is executed by the Chairman of the Committee on the date indicated below:

Date:_____          ESOP Committee

By:_____
Chairman

Date:_____2/17/2001_____          LaSalle Bank N.A. not individually, but solely as Trustee of the AMSTED Industries Incorporated Employees' Stock Ownership Trust

By:_____

Name:_____

Title:_____

## SUPPLEMENT A

### Special Rules Applicable to Employees of
### Advanced Products Corporation, Varlen Corporation
### and other related Affiliates

A-1.  Purpose.  The purpose of this Supplement A is to provide special rules for participation by certain employees of the following Affiliates in the Amsted Industries Incorporated Employees' Stock Ownership Plan (the "Plan"):

| Affiliate | Effective Date |
|---|---|
| Varlen Corporation | August 16, 1999 |
| Brenco, Incorporated | August 16, 1999 |
| Chrome Crankshaft Company of Illinois | August 16, 1999 |
| Chrome Locomotive, Inc. | August 16, 1999 |
| Consolidated Metco, Inc. | August 16, 1999 |
| Dynamic Corporation | August 16, 1999 |
| Keystone Industries, Inc. | August 16, 1999 |
| Keystone Railway Equipment Co. | August 16, 1999 |
| Locomotive Air Services, Inc. | August 16, 1999 |
| Means Industries, Inc. | August 16, 1999 |
| Prime Manufacturing Corporation | August 16, 1999 |
| Quality Bearing Service of Kentucky, Inc. | August 16, 1999 |
| Quality Bearing Service of Arkansas, Inc. | August 16, 1999 |
| Quality Bearing Service of Nevada, Inc. | August 16, 1999 |
| Quality Bearing Service of Virginia, Inc. | August 16, 1999 |
| Unit Rail Anchor Company, Inc. | August 16, 1999 |
| Burgess Norton Company (formerly Advance Products Corporation) | August 31, 1999 |

A-1

A-2.  Background.  Effective as of the respective effective dates indicated above, (the "Closing Dates"), the outstanding shares of stock of the listed Affiliates was purchased, directly or indirectly, by the Company.

A-3.  Participation in Plan.  Effective as of the Closing Dates, each of the Affiliates listed above became a participating employer in the Plan.  Accordingly, as of the Closing Dates, each employee of these Affiliates who met the eligibility requirements of Section 2.1 of the Plan automatically became a participant in the Plan as of such date.  Each other employee of these Affiliates will become a participant in the Plan after the Closing Dates in accordance with Section 2.1 of the Plan.  Unless specifically provided for under the Plan, the employees of these adopting Affiliates will not be credited with their respective years of service with the adopting Affiliates prior to the Closing Dates.

A-4.  Years of Service: Commencement of Distributions.  Solely for purposes of meeting the timing requirements under Section 7.7(d)(i) of the Plan regarding the commencement of distributions, and not for purposes of determining the percentage of the balance in a Participant's Account which is nonforfeitable, a former employee of any of the Affiliates listed in Section A-1 or of Ceramic Cooling Tower Co. shall be credited with a Year of Service for each full year of employment with these predecessor employers.

A-5.  Terms and Provisions.  All terms and provisions of the Plan shall apply to this Supplement A except that, where the terms and provisions of the Plan and this Supplement A are in conflict, the terms and provisions of this Supplement A shall control.

CHI99 3528282-4.020997.0013

A-2



**Amsted**
INDUSTRIES

Employees' Stock Ownership Plan

## ANNUITY AND DIRECT ROLLOVER ELECTION NOTICE
## FOR PARTICIPANTS WITH ESOP ACCOUNTS IN EXCESS OF $5,000

**EMPLOYEE INFORMATION (Please Print):**

DATE NOTICE GIVEN: **4/13/2000**

Name: **BRADLEY** **JEFFREY** **W**
Last                First              M.

Social Security Number

**Qualified Joint and 50% Survivor Annuity and Life Annuity Notice:** The ESOP requires that if (a) the total of your vested ESOP benefits exceed $5,000, and (b) you are married at the time you receive a distribution from the ESOP, your distribution must be paid to you as a qualified joint and 50% survivor annuity, unless you elect otherwise with your spouse's consent. If you are not married, your distribution must be paid to you in the form of a single life annuity, unless you elect otherwise.

A qualified joint and 50% survivor annuity pays you a reduced monthly amount for life and upon your death 50% of that amount to your surviving spouse. A single life annuity pays you a monthly amount for life with no payments after your death. The exact amount of the payments to you and to your surviving spouse will depend upon the amount of your vested ESOP benefits, the life expectancy of you and your spouse, and the annuity purchase rates determined by the insurance carrier and available at the time the contract is purchased. The approximate amount of the monthly annuity payments you may expect beginning on **7/1**, 20**00**, is equal to $ **6.14** per thousand dollars of your vested ESOP account balance. The amount payable to your surviving spouse would be equal to 50% of that amount. These estimates are based on your and your spouse's ages and an interest rate of **5.0** %. The actual interest rate, as well as other actuarial assumptions, used in the purchase of the annuity will be determined by the insurance carrier that provides the annuity, and may result in a different monthly payment amount.

You may elect in writing not to receive your benefit in the form of an annuity. You must make this election within the 90-day period before your benefits begin. If you are not married, you should check the appropriate box designating the form of payment and sign the attached Application for Benefits and Direct Rollover Election form. In addition, if you are married, your spouse must consent in writing to your election. Your spouse's consent must be witnessed by a notary public. Your election will not be valid until it is received by the Plan Administrator. You may revoke your waiver of the annuity any time before your benefits begin. A revocation will not require the consent of your spouse and will result in your benefit being paid as a qualified joint and 50% survivor annuity or, if you are not married, a single life annuity. If you waive the annuity provided under the ESOP, you may elect to have your distribution paid in a single sum or (if you are eligible) in partial payments. To be eligible to elect partial payments, you must be at least age 55 or have completed 30 or more years of service at your severance date.

**Right to Defer Distribution:** If you do not specify a date, payments on termination of employment or retirement will normally commence the first day of the month following your 65th birthday or date of retirement, if later. You may specify any date after your termination or retirement, but no later than the April 1 following the year in which you attain age 70½. If you do not elect distribution at this time, it is your responsibility to keep the Plan Administrator advised of your current address. This section is not applicable if you have previously deferred your distributions and are now requesting distribution of your ESOP benefits, or if age 70½ mandatory distributions must be made.

**Mandatory Distributions At Age 70½:** Distributions must be made from the ESOP after you are 70½ and have terminated employment. In addition to the regular distribution options, you may elect, with spousal consent if applicable, to receive only the minimum distribution required by law under Internal Revenue Code Section 401(a)(9).

**Direct Rollover Notice/Income Tax Withholding:** If you waive the qualified joint and 50% survivor annuity or the single life annuity and elect either a single sum payment or partial payments, those forms of distribution are known as "eligible rollover distributions." As more fully described in the attached NOTICE OF TAX TREATMENT OF DISTRIBUTION FROM ESOP, you may generally request that all or a portion of your eligible rollover distribution be paid directly to an IRA or another qualified retirement plan that accepts rollover distributions (a Direct Rollover). If you do not elect a Direct Rollover of an eligible rollover distribution, the ESOP must withhold 20% federal income tax from the portion that is paid to you and, if you are under age 55, that portion may be subject to a 10% excise tax. The direct rollover and mandatory federal income tax withholding rules do not apply if you elect an annuity or (if you are at least age 70½) to the portion of your distribution that is the required minimum distribution under Internal Revenue Code Section 401(a)(9). However, regular federal income taxes will be withheld from any annuity payments and any required minimum distribution unless you elect otherwise by completing the Income Tax Withholding section of the attached form. Also, please read and (if applicable) complete the state income tax withholding election section.

**30-Day Notice:** Payments are made as soon as practicable after the end of the calendar quarter following receipt of your request for distribution provided your request for a distribution form is received prior to the end of the calendar quarter. In any event, you may have at least 30 days from the date this form was given to you (see box at top of page) to decide how you want to receive your distribution. YOU MAY CHANGE YOUR ELECTION AT ANY TIME BEFORE YOUR ESOP BENEFITS COMMENCE.

Date Prepared: **4/12/2000**

Prepared By: **Darlene Felksid**

Data prepared is for the quarter ended: **6/30/2000**

Title: **General Payroll Supervisor**

ESOP IAA Rev. (1-2000)          White-Employee          Green-Local Administrator

**EXHIBIT**

**AMSTED INDUSTRIES INCORPORATED**
**CAPITAL ACCUMULATION PLAN**
**WITHDRAWAL FORM**
(For ~~benefits~~ ~~~~ ~~~~ ification Program under the Plan)

Social Security Number _____

Participant Name _JEFFERY W BRADLEY._

Address _1465 FARINGTON DRIVE_
City _NAPERVILLE_ State _IL_ Zip _60563_

Location Code _____

Severance Date _____

Date Form Given to Participant _4/13/2009_

**REASON FOR WITHDRAWAL** (Reason # 1 – 6 will constitute a full payout)

- [✓] 1  Retirement
- [ ] 2  Disability (Plan Administrator's approval is attached)
- [ ] 3  Death (Beneficiary designation form is attached)
- [ ] 4  Termination of employment
- [ ] 5  Qualified Domestic Relations Order (QDRO – Alternate Payee)
- [ ] 6  I am 59–1/2 or older (Birth Date __/__/__ )
- [ ] 7  Minimum Required Distribution $_____ *
  (Also select source of withdrawal – box 9a, 9b or 9c if applicable)
- [ ] 8  Hardship (Plan Administrator's approval is attached)
  (Also select source of withdrawal – box 9a, 9b or 9c if applicable)
- *  Applicable only to terminated employees over age 70–1/2

**Source of Withdrawal for Reason 7 or 8 only**

- [ ] 9a  Employee Deferred Comp $_____ or %___
- [ ] 9b  Rollover Pre–Tax        $_____ or %___
- [ ] 9c  Rollover After–Tax      $_____ or %___

**TAX INFORMATION**

Federal income tax withholding of 20% will automatically be withheld from your distribution unless you elect to have your distribution transferred from the CAP to an individual retirement account (IRA) or another qualified plan. However, after–tax contributions (if applicable) are not taxable and will be paid directly to you. Please read the enclosed IRS Special Tax Notice Regarding Plan Payments for more information on plan distributions.

- [✓] Check here if you would like a distribution made payable to you.
- [✓] Check here if you would like to roll your money into an IRA or another qualified plan.

- [✓] **100% ROLLOVER**
  I want all of my eligible plan money to be rolled over.

- [ ] **PARTIAL ROLLOVER**
  I want ____% of my eligible money to be rolled over (minimum of $500). The remaining amount is to be sent to me directly.

Name of IRA or Plan: _Fidelity Mgt. Trust Co._
(If Fidelity, attach IRA application form)

Name, address and telephone number of Trustee or Custodian of IRA:
_Fidelity Investments_
_Attn. Corporate Rollovers_
_P.O. Box 770001_
_Cincinnati, OH 45277-0010_

Name, address and telephone number of Plan Administrator of Qualified Plan:
_____
_____
_____
_____

**State Income Tax Withholding For Distributions** – By checking the appropriate box below, indicate whether you want state income tax withheld from your distribution.

- [ ] Yes. Please withhold state income taxes (if applicable).
- [ ] No. Do not withhold state income tax from distribution unless required by law.

**IMPORTANT NOTE:** You may take at least 30 days from the date this form was given to you (shown above) to decide whether or not you want to receive a distribution from the plan and you may revoke this election until payment is received. However, generally, you must receive your full plan benefits as soon as practicable after September 30 of the year in which you reach Age 65 or in which you terminate employment, if later.

Participant's Signature _J W Bradley_ Date _4/25/2000_

Benefit Representative _____ Date _____

CAP1 Rev. 11/97

**AMSTED INDUSTRIES INCORPORATED NON-QUALIFIED EXTENDED BENEFIT PLAN FOR DESIGNATED EMPLOYEES AND ESOP PARTICIPANTS (EXSOP)**

<u>DISTRIBUTION FORM</u>

Social Security Number _____ Location Code _O4GP_ (Office Use Only)

Participant's Name _JEFFERY    W.   BRADLEY_

Address _1465   FARINGTON    DRIVE._

City _NAPERVILLE_ State _IL_ Zip Code _60563_

<u>REASON FOR DISTRIBUTION</u>

__✓____ Retirement

_____ Disability

_____ Death (Beneficiary form attached)

_____ Termination of employment

Severance Date _06/30/2000_

<u>FEDERAL AND STATE INCOME TAX WITHHOLDING</u>

Federal and state taxes will be withheld as required by law. Participant may request that additional amounts be withheld for either federal or state taxes below:

Additional federal tax to be withheld $_____

Additional state tax to be withheld $_____

Participant's Signature _J W Bradley_ Date _4/25/2000_
(VOID IF NOT SIGNED AND DATED)

APPROVED AND ACCEPTED this _____ day of _____, 19_____.

AUTHORIZED SIGNATURE_____

**Amsted** INDUSTRIES 

**Employees' Stock Ownership Plan**

Application For Benefits and Direct Rollover Election for Participants With Account Balances in Excess of $5,000 **(FORM I)**
For Distributions Other than Distributions due to Death or QDRO

## 1. EMPLOYEE INFORMATION

Name: _BRADLEY_ (Last)   _JEFFERY_ (First)   _WILLIAM_ (M.)   Social Security Number

Address: _1465 FARINGTON DRIVE_ (Street)   Address No. 2   _04-08-1940_ (Date of Birth)

_NAPERVILLE_ (City)   _ILLINOIS_ (State)   _60567_ (Zip Code)

### Reason for Distribution (Check One)

[X] Retirement   [ ] Termination   [ ] Total & Permanent Disability   [ ] Attainment of Age 70½

I certify that on this date I am (check one):
[X] Married   [ ] Not Married

I understand that a change in marital status prior to the time my benefits commence may make my election ineffective. I agree to inform the Plan Administrator of any change in my marital status.

## 2. SPOUSE INFORMATION

Name: _BRADLEY_ (Last)   _SUSAN ELISABETH_ (First)   (M.)   Social Security Number

_05-29-1942_ (Date of Birth)

## 3. DISTRIBUTION ELECTIONS *(PLEASE READ ALL INSTRUCTIONS CAREFULLY AND COMPLETE ONLY THE SECTIONS THAT ARE APPLICABLE TO YOU)*

I.   **TIME OF DISTRIBUTION** (check one):

[ ] A.   **Deferred Distribution.** I elect to defer my distribution until _____(fill in date).
*Do not fill out the remaining parts of this form if you elect to defer your distribution for more than three months, but sign and date the form in Section 4. You will be given a new election form when you advise the Plan Administrator that you want to receive your deferred distribution. This section is not applicable if you have previously deferred distribution, or if you are age 70½.*

[X] B.   **Current Distribution.** I elect to receive my distribution as promptly as possible, in accordance with the terms of the ESOP, and in the form requested in Part II.

**ALL PARTICIPANTS MUST SIGN AND DATE THIS FORM IN SECTION 4 AND (UNLESS A DEFERRED PAYMENT IS ELECTED) SECTIONS 6 AND 7**

**METHOD OF PAYMENT.** I have received an explanation of the qualified joint and 50% survivor annuity and life annuity and elect as follows (Check A or B below):

[ ] A.   **Election of Automatic Form of Distribution.** I elect to receive my distribution in the automatic form provided under the Plan, which is by the purchase of an annuity contract from an insurance company in the form of a qualified joint and 50% survivor annuity if I am married, or a life annuity if I am not married.

[X] B.   **Waiver of Automatic Form of Distribution/Election of Other Form of Distribution.** I elect to waive the automatic form of annuity described above (provided my spouse consents by completing the spousal consent of this form on page 2, Section 5). In lieu of automatic form of payment, I elect to receive my distribution in the following form (check box (a) or, if applicable, box (b) or (c)):

[X] (a)   A Single sum distribution (Complete Part III)

[ ] (b)   Partial Payment. *This form of payment is only available if you are at least age 55 or have completed 30 years of service on your severance date. If you elect partial payment, you must elect to receive at least $5,000 or 20% of your vested ESOP account balance, whichever is greater. Fill in the information requested below (and complete Part III):*

[ ] I elect to receive $_____, OR [ ] I elect to receive _____% of my vested ESOP account balance.
If I die before receiving the full value of my ESOP account, the balance shall be paid to my surviving spouse or such other beneficiary as I have designated below with (if applicable) the consent of my spouse.

[ ] (c)   Minimum required distribution under Internal Revenue Code Section 401(a)(9). *This form of payment is only available if you are at least age 70½ (Do Not complete Part III)*

### BENEFICIARY DESIGNATION

**PRIMARY BENEFICIARY(IES).** I designate the following **PRIMARY** beneficiary(ies) to receive any ESOP benefits which are unpaid at the time of my death.

| Name | Social Security No. | Address | Relationship | Share %* |
|---|---|---|---|---|
| _SUSAN E BRADLEY_ | | _1465 FARINGTON NAPERVILLE IL_ | _WIFE_ | _100_ |

*Be sure that the total of all shares equal 100%

**SECONDARY BENEFICIARY(IES).** I designate the following **SECONDARY** beneficiary(ies) to receive any ESOP benefits which are unpaid at the time of my death and no primary beneficiary survives me.

| Name | Social Security No. | Address | Relationship | Share %* |
|---|---|---|---|---|
| _SARAH E BRADLEY-LEW_ | | _NAPERVILLE IL_ | _DAUGHTER_ | _33.3_ |
| _LUKE E BRADLEY_ | | _TWIN FALLS IN._ | " | _33.3_ |
| _RACHEL S LURITSH_ | | _NAPERVILLE IL._ | " | _33.4_ |

*Be sure that the total of all shares equal 100%

The primary and secondary beneficiary(ies) designated above supersede(s) all previous designations made by me under the AMSTED ESOP, and are subject to the GENERAL PROVISIONS section of this form.

ESOP I - Part I (2000)

**EXHIBIT**

"C"

III. DIRECT ROLLOVER ELECTION

A. I have read the NOTICE OF TAX TREATMENT, and I elect to have my single sum (or partial payments, if applicable) paid as follows (check one):

☐ (a) In a check made payable to me. I understand that the mandatory 20% federal income tax withholding will apply (10% for Minimum Required distributions).

☑ (b) In a Direct Rollover. (Complete Part B)

☐ (c) In a combination of a check made payable to me and a Direct Rollover, as indicated below. I understand that the amount of the Direct Rollover must be at least $500. (Complete the remainder of this Part A and Part B)

$_____ (or _____ percentage of my distribution) in a check made payable to me. I understand that the mandatory 20% federal income tax withholding will apply to this portion of the request; and

$_____ (or _____ percentage of my distribution) in a Direct Rollover. ($500 Minimum)

B. Direct Rollover Information (fill out only if you have elected a Direct Rollover). ☑ IRA ☐ PLAN

Name of IRA or Plan: Fidelity Investments
Trustee or Custodian: Fidelity Mgt. Trust Co.
Account Number: 172-475017
Contact Person: Jennifer Zeglar  Telephone No. 800-526-2260
Address: ATTN: Corporate Rollover Department, TC PLX Z7000I
Cincinnati, OH 45277-0010
            City                    State              Zip

**NOTE:** You may make a Direct Rollover to only one IRA or another qualified retirement plan. The Direct Rollover check will be made payable to your IRA or your other qualified retirement plan.

4. SIGNATURE OF ESOP PARTICIPANT

I certify that the above information is true and accurate to the best of my knowledge. If applicable, I also certify that the recipient of the Direct Rollover identified above is either an IRA or another qualified retirement plan. I acknowledge receipt of the Notice of Tax Treatment.

If applicable, in consideration of the distribution to me as a total distribution of my entire benefits under the ESOP, receipt of which I hereby acknowledge, I hereby release and forever discharge the ESOP, the trust under the ESOP, the trustee under the trust, administrator administrating the ESOP, AMSTED Industries and its related companies, and their respective officers, agents, heirs, executors, administrators, predecessors, successors, and assigns, of and from any and all claims, demands, actions, and rights of action of any kind or nature whatsoever which I now or may hereafter have on account of my participation in the ESOP.

4/25/2000 (ESOP)                    Jeffrey W. Bradley
Date                               Signature of ESOP Participant

*Important Note: You may revoke this election until payment is received.*

5. CONSENT OF SPOUSE TO WAIVER OF QUALIFIED JOINT AND 50% SURVIVOR ANNUITY, ALTERNATE FORM OF PAYMENT AND, IF APPLICABLE, DESIGNATION OF NONSPOUSE PRIMARY BENEFICIARY

I certify that I am the participant's spouse. I understand that my consent is required to my spouse's (a) waiver of a qualified joint and 50% survivor annuity form of distribution, (b) election of an alternate form of distribution, and (c) (if applicable) designation of a primary nonspouse beneficiary in addition to or other than myself. I understand that by consenting to this waiver and alternate form of distribution, and (if applicable) my spouse's designation of a primary nonspouse beneficiary, I will NOT receive a qualified joint and 50% survivor annuity and may not receive any other benefit under the ESOP upon the death of my spouse. I understand that my consent is irrevocable unless my spouse has revoked this election.

After considering the benefit to which I would be entitled under the qualified joint and 50% survivor annuity, I consent to my spouse's (a) waiver of the qualified joint and 50% survivor annuity, (b) election of an alternate form of distribution, and (c) (if applicable) designation of a primary nonspouse beneficiary for any portion or all of my spouse's vested ESOP benefits. I understand the financial effect of this decision.

APRIL 25 2000                      S. E. Bradley
Date                               Spouse's Signature
                                   SUSAN ELISABETH BRADLEY
                                   Spouse's Printed Name

ACKNOWLEDGEMENT: On this 25 day of April 2000, Susan Bradley appeared before me and acknowledged that she/he is the spouse of Jeffrey Bradley and that she/he freely and voluntarily signed the foregoing for the use and purpose set forth therein.

March 18, 2003                     Felicia F. Chiquette
My Commission Expires              Signature of Notary Public
                                   Felicia F. Chiquette
                                   Printed Name

6. POWER OF ATTORNEY (MUST BE COMPLETED BY ALL PARTICIPANTS)

I am a participant in the AMSTED Industries Incorporated Employees' Stock Ownership Plan and Trust ("ESOP"). I have qualified for a distribution of my account and I have elected to receive distribution of the value of my vested shares of stock of AMSTED Industries Incorporated (the "Company") allocated to my ESOP account. If these shares need to be sold to the Company to facilitate my distribution, I understand that I will receive the same value for my shares as if the transaction had been an exchange of shares for cash within the ESOP.

To accomplish the sale, if necessary, to the Company, I hereby irrevocably appoint the ESOP Plan Administrator as my agent and I hereby direct him to sell on my behalf to the Company all of the shares of stock distributable to me from the ESOP for a price as determined pursuant to the ESOP. I hereby irrevocably empower the Plan Administrator to execute all documents and to take any and all other actions necessary or appropriate to sell, transfer and assign all my right, title and interest in said shares of stock to the Company.

4/25/2000                          Jeffrey W. Bradley
Date                               Signature of ESOP Participant

**Amsted** 
I N D U S T R I E S

**Employees' Stock Ownership Plan**

Application For Benefits and Direct Rollover Election for Participants With Account Balances in Excess of $5,000 (FORM I)
For Distributions Other than Distributions due to Death or QDRO

## 1. EMPLOYEE INFORMATION

Name: BRADLEY        JEFFERY        WILLIAM
        Last        First        M.        Social Security Number

Address:

1465 FASINGTON DRIVE        Address No. 2        04-08-1940
        Street                Date of Birth

NAPERVILLE        ILLINOIS        60563
        City        State        Zip Code

**Reason for Distribution (Check One)**

| [✓] Retirement | [ ] Termination | [ ] Total & Permanent Disability | [ ] Attainment of Age 70½ |

I certify that on this date I am (check one):

[ ] Married  [✓] Not Married

I understand that a change in marital status prior to the time my benefits commence may make my election ineffective. I agree to inform the Plan Administrator of any change in my marital status.

## 2. SPOUSE INFORMATION

Name: BRADLEY        SUSAN        ELISABETH
        Last        First        M.        Social Security Number

08-28-1942
Date of Birth

## 3. DISTRIBUTION ELECTIONS *(PLEASE READ ALL INSTRUCTIONS CAREFULLY AND COMPLETE ONLY THE SECTIONS THAT ARE APPLICABLE TO YOU)*

**I.  TIME OF DISTRIBUTION** (check one):

[ ] **A.  Deferred Distribution.** I elect to defer my distribution until _____ (fill in date).
*Do not fill out the remaining parts of this form if you elect to defer your distribution for more than three months, but sign and date the form in Section 4. You will be given a new election form when you advise the Plan Administrator that you want to receive your deferred distribution. This section is not applicable if you have previously deferred distribution, or if you are age 70½.*

[✓] **B.  Current Distribution.** I elect to receive my distribution as promptly as possible, in accordance with the terms of the ESOP, and in the form requested in Part II.

**ALL PARTICIPANTS MUST SIGN AND DATE THIS FORM IN SECTION 4 AND (UNLESS A DEFERRED PAYMENT IS ELECTED) SECTIONS 6 AND 7**

**METHOD OF PAYMENT.** I have received an explanation of the qualified joint and 50% survivor annuity and life annuity and elect as follows (Check A or B below):

[ ] **A.  Election of Automatic Form of Distribution.** I elect to receive my distribution in the automatic form provided under the Plan, which is by the purchase of an annuity contract from an insurance company in the form of a qualified joint and 50% survivor annuity if I am married, or a life annuity if I am not married.

[✓] **B.  Waiver of Automatic Form of Distribution/Election of Other Form of Distribution.** I elect to waive the automatic form of annuity described above (provided my spouse consents by completing the spousal consent of this form on page 2, Section 5). In lieu of automatic form of payment, I elect to receive my distribution in the following form (check box (a) or, if applicable, box (b) or (c)):

[✓]  (a)  **A Single sum distribution (Complete Part III)**

[ ]  (b)  **Partial Payment.** *This form of payment is only available if you are at least age 55 or have completed 30 years of service on your severance date. If you elect partial payment, you must elect to receive at least $5,000 or 20% of your vested ESOP account balance, whichever is greater. Fill in the information requested below (and complete Part III):*

[ ] I elect to receive $_____, OR [ ] I elect to receive _____% of my vested ESOP account balance.
If I die before receiving the full value of my ESOP account, the balance shall be paid to my surviving spouse or such other beneficiary as I have designated below with (if applicable) the consent of my spouse.

[ ]  (c)  Minimum required distribution under Internal Revenue Code Section 401(a)(9). *This form of payment is only available if you are at least age 70½ (Do Not complete Part III)*

## BENEFICIARY DESIGNATION

**PRIMARY BENEFICIARY(IES).** I designate the following **PRIMARY** beneficiary(ies) to receive any ESOP benefits which are unpaid at the time of my death.

| Name | Social Security No. | Address | Relationship | Share %* |
|---|---|---|---|---|
| SUSAN E GRADLEY | | 1465 FASINGTON NAPERVILLE IL | WIFE | 100% |

*Be sure that the total of all shares equal 100%

**SECONDARY BENEFICIARY(IES).** I designate the following **SECONDARY** beneficiary(ies) to receive any ESOP benefits which are unpaid at the time of my death and no primary beneficiary survives me.

| Name | Social Security No. | Address | Relationship | Share %* |
|---|---|---|---|---|
| SARAH E BRADLEY-LEIN | | NAPERVILLE IL | DAUGHTER | 33.3 |
| CLARE E GRADLEY | | FALLEN FUENT IN. | " | 33.3 |
| RACHEL S LUKITSH | | NAPERVILLE IL. | " | 33.4 |

*Be sure that the total of all shares equal 100%

The primary and secondary beneficiary(ies) designated above supersede(s) all previous designations made by me under the AMSTED ESOP, and are subject to the GENERAL PROVISIONS section of this form.

ESOP I  Rev. (1-2000)

465.

# AMSTED INDUSTRIES
### INCORPORATED

44TH FLOOR · BOULEVARD TOWERS SOUTH
205 NORTH MICHIGAN AVENUE · CHICAGO, ILLINOIS · 60601

April 24, 2000

A special joint meeting of the Board of Directors and the ESOP Committee has been called by the Chairman, Mr. A. W. Goetschel, pursuant to Section 3.7 of the Bylaws, to be held at the office of the corporation, 205 N. Michigan Avenue, 44th Floor, Chicago, Illinois, at 4:00 p.m. (CST) on Tuesday, April 25, 2000.

Secretary

STATE OF ILLINOIS      )
                             )
COUNTY OF COOK     )

T. C. Berg, being duly sworn says that he is the Secretary of AMSTED Industries Incorporated and familiar with the names and addresses of the Directors of said company and that on April 24, 2000, he personally served the foregoing notice on each Director of said company, either by telephone or facsimile.

Secretary

Subscribed and sworn to before me
this 24th day of April, A.D. 2000.

*Pamela S. Curatolo*
Notary Public

"OFFICIAL SEAL"
PAMELA S. CURATOLO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 01/20/02

EXHIBIT
"D"



466.

## AMSTED INDUSTRIES INCORPORATED

## DIRECTORS, APRIL 25, 2000

A special joint meeting of the Board of Directors and the ESOP Committee of AMSTED Industries Incorporated was held at the office of the corporation, 205 N. Michigan Avenue, Chicago, Illinois, on Tuesday, April 25, 2000, at four p.m.

There were present at the meeting, in person or by phone, as evidenced by the roll call:

Messrs.    L. Collens

J. M. Dixon

A. W. Goetschel

R. A. Jean

J. E. Jones (by phone)

G. R. Lohman

W. R. Reum

R. E. Terry

D. B. Whitehurst.

The meeting came duly to order, the Chairman, Mr. A. W. Goetschel, presiding, and the Secretary, Mr. T. C. Berg, recording. The following AMSTED officers attended the meeting: O. J. Sopranos, B. D. Speice, R. A. Chiappetta, M. J. Hower and P. F. Fischer. Mr. J. Pawlosky of McDermott Will & Emery also attended the meeting.

A. W. Goetschel and other officers and advisers of the Company then discussed certain proposals concerning the Company's Employee Stock Ownership Plan ("ESOP").



467.

### DIRECTORS, APRIL 25, 2000

The directors discussed these matters and asked questions concerning the impact of these proposals on the ESOP and the repurchase obligation, long-term shareholder value, the financial condition of the Company and its liquidity, the fiduciary obligation to the ESOP as a whole, the legal and regulatory implications of the proposals, the impact of the proposal on all ESOP participants including departing and remaining participants, the Company's long-term business and financial strategies, the implementation of these proposals and other matters concerning the legal, financial, fiduciary, employee and shareholder implications of these proposals.

All officers of the Company, including officer directors, then left the meeting and the discussions on these matters continued.

Certain officers were then asked to join the meeting and the discussion on these matters continued.

Upon motion of the Board and the ESOP Committee, duly made and seconded upon the vote of all members of the Board and ESOP Committee (except that ESOP participants refrained from voting), the following was duly resolved:

WHEREAS, AMSTED Industries Incorporated (the "Company") has established the AMSTED Industries Incorporated Employees' Stock Ownership Plan, as amended and restated effective October 1, 1995 (the "Plan"), and the related AMSTED Industries Incorporated Employees' Stock Ownership Trust, as amended and restated effective October 1, 1995 (the "Trust") (collectively, the Plan and the Trust are referred to as the "ESOP"); and

WHEREAS, the Board of Directors of the Company and the ESOP Committee are aware that certain directors are also ESOP participants and that Mr. G. R. Lohman is an ESOP participant who has retired from the Company and therefore has the right to sell his shares to the Company at any time; and

468.

## DIRECTORS, APRIL 25, 2000

WHEREAS, the Board of Directors of the Company and the ESOP Committee deem it to be in the long-term best interests of the Company, the ESOP and long-term shareholder value, to conserve cash to assure adequate working capital for the Company; and

WHEREAS, Section 7.14 of the Plan currently provides for distributions to participants in the form of Company Securities subject to the requirement that the Company Securities be immediately put to the Company as provided in Section 7.16(d) of the Plan; and

WHEREAS, Sections 11.1 and 11.2 of the Plan provide that the ESOP Committee (as defined in Section 9.1 of the Plan) may from time to time amend the provisions of the Plan, retroactively or otherwise, to conform the Plan to applicable provisions of the Internal Revenue Code of 1986, as amended (the "Code") or in any manner the Committee deems desirable; and

WHEREAS, the Plan has previously been amended, and the ESOP Committee has determined that further amendment of the Plan is now considered desirable; and

WHEREAS, Sections 8.1 and 8.2 of the Trust provide that the ESOP Committee may from time to time amend the provisions of the Trust, retroactively or otherwise, to conform the Trust to applicable provisions of the Code or, with the consent of the Trustee defined in Section 1.4 of the Trust (the "Trustee"), which consent shall not be withheld unreasonably, in any manner the ESOP Committee deems desirable; and

WHEREAS, the Trust has previously been amended, and the ESOP Committee has determined that further amendment of the Trust, with the consent of the Trustee, is now considered desirable.

NOW, THEREFORE, IT IS RESOLVED, that pursuant to the amending power reserved to the ESOP Committee under Sections 11.1 and 11.2 of the Plan and Sections 8.1 and 8.2 of the Trust, the Plan and Trust be, and hereby are amended, effective 12:00 midnight, April 25, 2000 (the "Effective Date"), as follows; provided, however, that the approval of the following amendments be subject to and contingent upon the receipt of a favorable determination letter from the Internal Revenue Service that the amendments do not adversely affect the tax-qualified status of the Plan:

1. To delete the qualified joint and survivor annuity, survivor annuity and life annuity forms of distribution as described in Article 7 of the Plan;

2. To provide for the distribution(s) of less than the full balance of a participant's Account to be made in increments equal to 20% of the participant's account balance and paid as frequently as annually, rather than quarterly, as described in Section 7.5 of the Plan;

*TLS*

469.

## DIRECTORS, APRIL 25, 2000

3.    To provide for the purchase by the Company of Company Securities distributed to participants pursuant to Section 7.14 of the Plan and immediately put to the Company pursuant to Section 7.16(d) of the Plan in the following manner (to be consistent with Section 409(h) of the Code):

(a)    The amount paid with respect to a "total distribution" (as defined in Section 409(h) of the Code) shall be paid in equal annual installments commencing not later than 30 days after exercise of the put and not exceeding four years, with adequate security provided and reasonable interest paid on the unpaid amount; or

(b)    The amount paid with respect to an installment distribution shall be paid not later than 30 days after exercise of the put;

4.    To provide for the payment by the Company of all requests for distributions under the ESOP that are received by the Company on or before the Effective Date to be made in accordance with the terms of the Plan and Trust then in effect; and

5.    To amend the Trust to be consistent with the amendments to the ESOP Plan.

FURTHER RESOLVED, that the Summary Plan Description of the Plan be amended to reflect the above amendments to the ESOP and that an amended Summary Plan Description be distributed to ESOP participants as promptly as administratively practical.

FURTHER RESOLVED, that the Notice to ESOP Participants, substantially in the form attached hereto, describing the above amendments to the ESOP be posted and distributed to ESOP participants as promptly as administratively practical.

FURTHER RESOLVED, that the Company issue promissory notes and other instruments necessary or desirable to effect the amendments to the ESOP provided herein.

FURTHER RESOLVED, that the officers of the Company are hereby authorized in the name and on behalf of the Company to prepare, execute and deliver any such amendments, agreements, instruments, certificates or other documents and to do and perform any acts whatsoever which such officer may deem necessary, appropriate or desirable in order to effectuate and carry out the purpose and intent of the foregoing resolutions, and the Company does hereby ratify, confirm and approve and adopt in all respects all acts heretofore done or performed by any person in connection with these resolutions.

470.

## DIRECTORS, APRIL 25, 2000

There being no further business before the Board, the meeting, on motion regularly made and seconded, adjourned.

_____
Secretary of the Corporation

_____
Secretary of the Committee

Civil Cover Sheet

http://www.ilnd.uscourts.gov/_vti_bin/shtml.dll/PUBLIC/Forms/cvcover.ht

*Cat 3*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

## Civil Cover Sheet 01C 2963

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Northern District of Illinois.

MAGISTRATE JUDGE DENLOW

**Plaintiff(s): Jeffery Bradley**

County of Residence: DuPage

Plaintiff's Atty:  Mark D. DeBofsky
DeBofsky & DeBofsky
77 W. Washington St., Suite
500, Chicago, Il. 60602
312-372-5718

**Defendant(s): Amsted Industries Incorporated Employees' Stock Ownership Plan ("ESOP"), AMSTED INDUSTRIES, and M.J. HOWER**

County of Residence:

Defendant's Atty:



II. Basis of Jurisdiction:        **3. Federal Question (U.S. not a party)**

III. Citizenship of Principle Parties (Diversity Cases Only)

Plaintiff:- **N/A**
Defendant:- **N/A**

IV. Origin :        **1. Original Proceeding**

V. Nature of Suit:        **791 E.R.I.S.A**

VI. Cause of Action:        **Claim for benefits and/or for breach of fiduciary duty--29 U.S.C. Sec. 1132(a)(1)(B) and 1132(a)(3)**

VII. Requested in Complaint

Class Action: **No**
Dollar Demand:
Jury Demand: **No**

VIII. This case **Is NOT** a refiling of a previously dismissed case. (If yes case number __ by Judge __)

Signature:

Date:        4/25/01

DOCKETED

APR 2 5 2001

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

In the Matter of

Jeffery Bradley v. Amsted Industries Employees' Stock Ownership Plan,

Amsted Industries, and M.J. Hower

**01C 2963**

Case Number: **JUDGE MORAN**
MAGISTRATE JUDGE DENLOW

APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

Jeffery Bradley

DOCKETED

APR 2 5 2001

01 APR 25 PM 2:42 FILED-ED4

| (A) | | | (B) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME Mark D. DeBofsky | | | NAME Nathan Q. Rugg | | |
| FIRM DeBofsky & DeBofsky | | | FIRM DeBofsky & DeBofsky | | |
| STREET ADDRESS 77 W. Washington St., Suite 500 | | | STREET ADDRESS 77 W. Washington St., Suite 500 | | |
| CITY/STATE/ZIP Chicago, Il. 60602 | | | CITY/STATE/ZIP Chicago, Il. 60602 | | |
| TELEPHONE NUMBER (312) 372-5718 | FAX NUMBR (312) 372-0117 | | TELEPHONE NUMBER (312) 372-5718 | FAX NUMBER 372-0117 | |
| E-MAIL ADDRESS mark@debofsky.com | | | E-MAIL ADDRESS nrugg@debofsky.com | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 03127892 | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 6272969 | | |
| MEMBER OF TRIAL BAR? | YES X | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO X |
| TRIAL ATTORNEY? | YES X | NO ☐ | TRIAL ATTORNEY? | YES X | NO ☐ |
| | | | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO X |

| (C) | | | (D) | | |
|---|---|---|---|---|---|
| SIGNATURE | | | SIGNATURE | | |
| NAME | | | NAME | | |
| FIRM | | | FIRM | | |
| STREET ADDRESS | | | STREET ADDRESS | | |
| CITY/STATE/ZIP | | | CITY/STATE/ZIP | | |
| TELEPHONE NUMBER | FAX NUMBER | | TELEPHONE NUMBER | FAX NUMBER | |
| E-MAIL ADDRESS | | | E-MAIL ADDRESS | | |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | | |
| MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ | MEMBER OF TRIAL BAR? | YES ☐ | NO ☐ |
| TRIAL ATTORNEY? | YES ☐ | NO ☐ | TRIAL ATTORNEY? | YES ☐ | NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ | DESIGNATED AS LOCAL COUNSEL? | YES ☐ | NO ☐ |