Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Moran | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2963 | **DATE** | 7/1/2004 |
| **CASE TITLE** | JUAN ARMSTRONG, et al vs. AMSTEAD INDUSTRIES, INC., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

MEMORANDUM OPINION AND ORDER

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Plaintiffs' motion for sanctions is denied. Plaintiffs' experts will however be allowed to supplement their opinions in light of the belatedly-produced documents.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 3 0 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 216 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUAN ARMSTRONG, et al., )
)
        Plaintiffs, )
)
vs. ) No. 01 C 2963
)
AMSTEAD INDUSTRIES, INC., et al., )
)
        Defendants. )

**DOCKETED**
**JUL 0 2 2004**

## MEMORANDUM OPINION AND ORDER

Plaintiff class brought this action against Amsted Industries, Inc. (Amsted), LaSalle Bank (LaSalle) and various other defendants for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., (ERISA). Plaintiffs now seek sanctions against Amsted and LaSalle for discovery abuses, and request that the court strike the opinions of three of defendants' expert witnesses concerning Amsted's stock repurchase obligation. Plaintiffs claim that despite numerous production requests, defendants did not disclose various relevant documents until after the close of fact discovery and plaintiffs' submission of their expert disclosures. Nonetheless, defendants provided these documents to their own experts. Plaintiffs seek to bar defendants' use of certain parts of opinions of Robert Gross, Lawrence Levine, and Joseph Belger. Plaintiffs' motion for sanctions is denied.

## BACKGROUND

After more than sixteen months, fact-discovery in this case closed on August 22, 2003. Plaintiffs made their expert disclosures on September 5, 2003, and defendants made their disclosures on December 10, 2003. During discovery, plaintiffs made several production requests to Amsted and LaSalle. In request no. 51 of their First Requests for Production

216

submitted to Amsted on May 3, 2002, plaintiffs asked for: "Documents provided by either AMSTED Industries, Inc. or the AMSTED ESOP, to any third-party for use in the preparation of any stock repurchase obligation feasibility study, analysis, opinion, report and/or projection in connection with, or preparation for, the Varlen merger." Amsted objected to the production of documents generated before 1999, but otherwise complied with the request. In request no. 55 of their Second Requests for Production made to Amsted on June 13, 2002, plaintiffs requested: "To the extent not previously produced, a copy of all documents, data compilations and tangible things that are in your possession, custody or control that you may use to support any claims or defenses." Amsted responded that the "[i]nvestigation continues." On October 21, 2002, plaintiffs served Amsted with their Third Requests for Production, in which request no. 59 read: "To the extent not previously produced, any data, output, report or other analysis generated by, or created with PERLS software, that it is/was related to or made in conjunction with any stock repurchase obligation stemming from any corporate acquisition or merger from January 1, 1997 to the present." Amsted once again objected to the temporal scope of the request and referred plaintiffs to previously disclosed documents.

Plaintiffs also made requests for production on LaSalle Bank. On October 9, 2002, plaintiffs requested "All documents regardless of form, including all documents stored on magnetic or digital media, provided by Amsted Industries, Inc., and/or the Amsted Industries, Inc. Employee Stock Ownership Plan (ESOP) to LaSalle Bank, N.A. as Trustee of the Amsted Industries, Inc. Employee Stock Ownership Plan (ESOP) for its use in serving as trustee of the Amsted Industries, Inc. Employee Stock Ownership Plan (ESOP) from January 1, 1997 to the present." LaSalle stated that it would produce all non-privileged documents responsive to the

request.

Finally, plaintiffs requested that Matthew Hower, Amsted's treasurer, bring certain documents to his deposition, including "[f]easibility studies, analyses, opinions, reports and/or projections prepared in connection with the ESOP stock repurchase obligation resulting from the, prepared at the direction of, reviewed by, circulated to or addressed to any Amsted officer, director and/or employee" and all documents in his control that he may use to support his claims and defenses.

In response to Amsted's objection to the production of documents generated before 1999, plaintiffs brought a motion to compel. On December 18, 2002, the court ordered defendants to supplement their previous responses to plaintiffs' production requests with documents from January 1, 1998 to January 1, 1999. Armstrong v. Amsted, 2002 WL 31844956 (N.D.Ill. 2002).

After the close of fact-discovery, and after plaintiffs had made their expert disclosures, defendants provided plaintiffs with three different types of documents that were previously undisclosed. On October 1, 2003, Amsted produced twelve PERLS reports from 1998 and two from 1999. LaSalle's expert, Robert Gross, refers to these reports in his opinion, finding that Amsted used PERLS software to analyze its repurchase obligation throughout 1998 and 1999. On December 31, 2003, three days before Amsted's expert Lawrence Levine's deposition, Amsted produced spreadsheets documenting the company's quarterly ESOP repurchase history from 1984 to 2000. Levine received these spreadsheets while formulating his opinion after he requested more information from Amsted. Another spreadsheet allegedly generated by Amsted containing ESOP repurchase data from 1987 to 1999, appeared in Levine's report under Tab 3. Finally, on January 5, 2004, the day before the deposition of its expert, Joseph

Belger, LaSalle produced 100 pages of employee census spreadsheets listing various details about Amsted's ESOP participants, including their age, years of employment, and share account balances. To give plaintiffs time to review these census sheets, Belger's deposition was rescheduled.

## DISCUSSION

Plaintiffs argue that defendants' failures to produce the PERLS reports, the quarterly ESOP repurchase spreadsheets and the employee census sheets, in response to their production requests, are discovery abuses sanctionable under both the court's inherent powers and Federal Rule of Civil Procedure 37. Courts have an inherent power to sanction a range of litigation abuses – including discovery abuses – to ensure the "orderly and expeditious disposition of cases." Chambers v. NASCO, Inc., 501 U.S. 32, 43, 46 (1991). Furthermore, Rule 37 explicitly grants the court the power to sanction discovery abuses. It states: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. . . ." Amsted and LaSalle argue that the circumstances do not warrant sanctions. In separate responses each defendant addresses its alleged lapses and the effect on its expert witnesses' reports.

Amsted first argues that plaintiffs' motion should be denied because it does not comport with Local Rule 37.2, which requires a statement from the movant that a consultation between the parties was unable to resolve the discovery dispute or at least that attempts to schedule a consultation were made but were unsuccessful due to no fault of the movant. Though

plaintiffs' motion does not contain such a statement and apparently no consultation was attempted, we accept plaintiffs' contention that a meeting between the parties would have been fruitless, given plaintiffs' desired sanction.

In response to plaintiffs' allegations that defendants failed to produce the PERLS reports, Amsted argues both that plaintiffs never sought to compel these documents and that its failure to produce these documents was inadvertent and rectified when they were given to plaintiffs immediately after Amsted discovered the lapse. Plaintiffs maintain that the PERLS reports from 1998 and 1999 should have been turned over in response to three of their requests for production and to the document requests submitted with Hower's deposition notice. Defendants objected to all of these requests to the extent they sought documents generated before January 1, 1999, leading to plaintiffs' motion to compel. We ordered defendants to supplement their responses to include materials from 1998. Amsted argues that plaintiffs only sought to compel the additional documents for certain requests from its First Requests for Production. Thus, it maintains that of the four allegedly relevant requests it needed only to provide documents from 1998 in response to request 51 from the First Requests for Production. This request did not implicate the PERLS reports, Amsted argues, because it sought documents relating to the Varlen merger, and the PERLS reports did not relate.

Though Amsted's technical reading of plaintiffs' requests and the motion to compel may be correct, it recognizes that this did not relieve its obligation to produce the PERLS reports from either 1999 (which clearly would have been implicated by plaintiffs' cited requests) or 1998. Thus, Amsted maintains that the failure was an inadvertent mistake by Hower, who allegedly believed that all the PERLS reports requested were produced earlier.

Amsted also contests plaintiffs' arguments regarding Lawrence Levine's use of data in

his expert report. Plaintiffs protest the late production of spreadsheets containing quarterly ESOP data from 1984 to 2000[1], the failure to produce the spreadsheet at Tab 3 of Levine's report, and Levine's reliance on this historical quarterly ESOP information in his standard deviation analysis. Amsted minimizes the significance of the tardy production of spreadsheets, arguing that much of the data contained in the spreadsheets had been produced in other documents and that Levine's reliance on this information (especially in relation to his standard deviation analysis of Amsted's repurchase obligation) was overstated by plaintiffs. However, as plaintiffs point out, defendant's production of some of the information through other documents does not satisfy its obligation under the rules of discovery. Furthermore, Levine does state that he relied on quarterly ESOP data from the 1980s and '90s in forming his opinions.

The parties dispute the significance of the spreadsheet at Tab 3 of Levine's report. Plaintiffs argue that this was another document prepared by Amsted, relied upon by its expert, yet not produced by defendant. Amsted maintains that this spreadsheet was Levine's creation -- a re-working of ESOP data supplied by Hower that was provided (belatedly) to plaintiffs. Levine's deposition testimony supports each party's allegations. He states both that he constructed the spreadsheet from data provided by Hower (Levine's dep., p.27), and that Hower gave him the document (Levine's dep., p.156). Regardless, the document containing quarterly reports on ESOP distributions and share turnover from March 1987 to June 1999,

---

[1] Plaintiffs also argue that defendants' use of these documents and others predating 1998 violates the court's memorandum order and opinion on their motion to compel. Armstrong v. Amsted, 2002 WL 31844956 (N.D.Ill. 2002). This is a misreading of the court's decision, which granted plaintiffs' request for the production of certain documents predating 1999. Over defendants' objections, we ordered them to supplement their responses to certain requests for production with documents from 1998, but declined to make them provide earlier documents. We did not generally bar discovery of all documents containing information before 1998, as plaintiffs appear to assert.

was not merely a duplication in content and form of the spreadsheets given to plaintiffs.

LaSalle also contests plaintiffs' motion for sanctions. Only one of plaintiff's relevant requests for production was directed at LaSalle. The request was for all documents provided to LaSalle by Amsted after January 1, 1997, for LaSalle's use in serving as the trustee of the Amsted ESOP. LaSalle made a general objection to the production of documents provided after 2000 and represented that it otherwise complied with the request. Plaintiffs dispute defendant's compliance, however, because after the close of fact-discovery LaSalle produced 100 pages of employee census spreadsheets which its expert witness, Joseph Belger, used to form his opinion regarding Amsted's forecasts of its ESOP repurchase obligations. Plaintiffs contend that LaSalle's failure to produce these documents earlier justifies the exclusion of Belger's expert opinion on the repurchase obligation.

LaSalle argues that it did not produce the employee census spreadsheets (nor the PERLS reports, nor the quarterly ESOP spreadsheets) in response to plaintiffs' request because Amsted had not given LaSalle these documents by the close of fact-discovery, much less for its use as trustee. LaSalle received the employee census spreadsheets through its outside counsel in November 2003, after Belger requested the information in order to determine whether there was a pattern among the employees who sought ESOP redemptions in 2000. LaSalle further argues that even if these documents had been provided at that time for its use as trustee, they would not have had to produce them because it had objected to the production of any documents provided by Amsted after 2000, and plaintiffs had not moved to compel. Plaintiffs appear to misunderstand this argument and wonder how they could have been required to compel something they did not know existed. Of course, their motion to compel would not have been for these specific documents, but rather, as with their motion to compel against Amsted,

would have sought to overcome LaSalle's objection to the temporal scope of plaintiffs' production request.

Plaintiffs argue that even if LaSalle did not have the documents earlier, and was not required to produce them, Belger's opinion should still be barred. They maintain that since 1999 one of the defendants has had control over the census sheets and as defendants have acted in concert in defending this matter, LaSalle is also responsible for Amsted's discovery abuse. Yet, plaintiffs have not shown how Amsted erred in not producing these census spreadsheets earlier. Of the relevant production requests made to Amsted, the documents appear to fit under the broadest request, no. 55 of the Second Requests for Production, seeking documents relating to any claim or defense. Yet, defendants argue that these spreadsheets did not become relevant to a claim or defense until after plaintiffs' experts released their reports and the documents were requested by Belger for his consideration. Plaintiffs have not provided us with any reason to disagree.

Defendants failed to turn over PERLS reports and quarterly ESOP data during fact-discovery that should have been produced. Yet, we do not find evidence of bad faith or obstruction on the part of either Amsted or LaSalle. Nor was either party in violation of a court order. Furthermore, plaintiffs have not demonstrated any harm from the late production that cannot be cured by a much less drastic remedy than sanctions. Harm to plaintiffs was minimized by a variety of factors. Plaintiffs' expert, Kace Clawson, was given time to consider the PERLS reports before his deposition. Plaintiffs were able to question Hower about the PERLS reports, Levine about the quarterly ESOP data, and Belger about the employee census reports. The opinions of defendants' experts concerning Amsted's repurchase obligations did not rely solely on the documents at issue. Even Levine's standard deviation analysis relied on

annual data, which plaintiffs received during fact-discovery, as well as quarterly data. Nonetheless, plaintiffs are correct that their experts were not able to consider and challenge the information in the PERLS reports, quarterly ESOP data spreadsheets and employee census reports, when forming their opinions and preparing their reports. To remedy this, both of plaintiffs' experts will be allowed to supplement their opinions in light of these belatedly-produced documents.

## CONCLUSION

Plaintiffs' motion for sanctions is denied. Plaintiffs' experts will however be allowed to supplement their opinions in light of the belatedly-produced documents.

JAMES B. MORAN
Senior Judge, U. S. District Court

July 1, 2004.